# Richmond

## JACK BANNER v. COMMONWEALTH OF VIRGINIA.

December 2, 1963.

Record No. 5624.

Present, All the Justices.

The opinion states the case.

*M. M. Long* and *A. G. Lively*, for the plaintiff in error.

*Harold V. Kelly, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

SNEAD, J., delivered the opinion of the court.

Jack Banner, sometimes hereinafter referred to as defendant, was indicted under the Maiming Act, § 18.1-65 Code of 1950, as amended.[1] The indictment charged that he "unlawfully, feloniously and maliciously did make an assault, upon B. J. Atwood, and him the said B. J. Atwood, unlawfully, feloniously and maliciously shoot, wound and shoot with a pistol * * * causing bodily injury to said B. J. Atwood with intent, * * * to maim, disable, disfigure and kill, * * *." Under this indictment the defendant could have been found guilty of any felony or misdemeanor substantially charged therein, namely; (1) malicious wounding with intent to maim, disable, disfigure or kill; (2) unlawful wounding with such intent; or (3) assault and battery. *Williams* v. *Commonwealth,* 153 Va. 987, 992, 151 S. E. 151; *Crutchfield* v. *Commonwealth,* 187 Va. 291, 293, 46 S. E. 2d 340.

The jury returned this verdict as amended in open court: "We the Jury find the defendant Jack Banner guilty of unlawful maming

---

[1] § 18.1-65. "If any person maliciously shoot, stab, cut or wound any person or by any other means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be confined in the penitentiary not less than three nor more than twenty years. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall, at the discretion of the jury, be confined in the penitentiary not less than one nor more than five years or be confined in jail not exceeding twelve months, and fined not exceeding five hundred dollars."

(sic) and fix punishable (sic) by confinement in the penitentiary for a period of five years."

A motion to set aside the verdict was overruled and the defendant was sentenced in accordance with the verdict. We granted him a writ of error.

The evidence of the Commonwealth and that of the defendant is in hopeless conflict. The sufficiency of the Commonwealth's evidence is not questioned and, under familiar principles, it will be summarized in the light most favorable to the Commonwealth.

On May 27, 1961, at about 11:30 p.m., State Trooper B. J. Atwood and Silas Hay, Deputy Sheriff of Dickenson county, were patrolling Route No. 80 in Dickenson county when they met a Chevrolet sedan traveling in the opposite direction. This automobile was approximately two feet across the white line and it crowded the police car onto the shoulder of the road. Atwood immediately made a U-turn to follow the vehicle which was proceeding about 25 to 30 miles per hour. He had just caught up with this car when the driver of it "suddenly slammed" on his brakes and pulled the front part of the vehicle onto the shoulder leaving the rear end on the hard surface. Atwood and Hay both got out of their car and walked up to the stopped automobile, which was operated by Claude Rickman. Seated beside him was Mrs. Rickman, his wife. The rear seat was occupied by the defendant, owner of the car, and Mrs. Alma Cline.

Trooper Atwood asked Rickman to exhibit his operator's license and the registration card for the vehicle. Banner, the defendant, who was seated behind the driver, "stuck" a Russell county deputy sheriff's badge out of the front window. Rickman handed Atwood his operator's license and Atwood inquired of him why he stopped so suddenly. The defendant then asked: "What the Hell do you fellows want?" and Atwood replied that it was a routine check and again asked Rickman the reason for the sudden stop. The defendant then stated: "Them God Damn Fellows ain't pulling nothing over on me" and he started to alight from the opposite side of the car. Atwood returned the operator's license to Rickman and proceeded to the rear of the car. There Hay informed him that the man who occupied the back seat was Jack Banner, a deputy sheriff of Russell county. Atwood requested the defendant, who was standing nearby, to "Step back here," but he refused. Hay said to Atwood: "Watch him, [defendant] he has got a gun in his hand." Atwood then walked up to the defendant, who had a gun partially concealed behind his

coat, and told him to surrender his gun but the defendant refused. According to Atwood, the defendant was weaving and had a strong odor of alcohol on his breath. As they stood there Atwood said "You are drunk. You are under arrest." "Give me your gun." The defendant cursed Atwood and again refused to surrender the gun. Then Mrs. Cline begged Banner to "get back in the car" and also requested Atwood for permission for them to take him home, which was refused.

Atwood again asked for the gun and Rickman and Hay made the same request without success. Banner backed up against the rear fender of the car with the gun in his hand "waving it back and forth." As Atwood reached for the gun Banner hit him in the chest with it. When Atwood turned from the blow Banner "fired" striking him in the left side. He shoved Banner away and drew his own gun from the holster. The two men, facing each other at a short distance, opened fire. Atwood shot six times and the defendant fired four shots. In addition to being hit in the side Atwood was shot in the right thigh. During the exchange of shots the defendant went backwards over a bank by the side of the road.

After Atwood called his headquarters for assistance and had reloaded his gun the defendant as directed came up the bank with his "hands up." Hay took the defendant's gun. The defendant had been shot four times. Atwood and Hay drove him to Prater where State Trooper Douty met them and drove the defendant to the Grundy hospital for treatment of his severe injuries.

Silas Hay corroborated Atwood's testimony in all material respects. He testified that Banner refused to submit to arrest, fired the first shot, and was intoxicated and abusive. Hay claimed that he fired three shots at the defendant after the defendant had fired the first shot at Atwood. Trooper Douty also testified that he smelled something "intoxicating" on Banner's breath.

The defendant's evidence was that Claude Rickman, the driver of the car, had pulled off the road because the accelerator was stuck. They had not seen the police car. The defendant was not intoxicated and had drunk not more than one glass of beer that night. Trooper Atwood ordered everyone out of the car by merely stating "unload." He did not arrest the defendant and he shot him for no reason. The defendant claimed he drew his gun and fired only after Atwood first shot him. None of the other passengers in Banner's automobile saw the defendant fire his gun and they said that Hay

did not shoot but merely kept Rickman covered on the opposite side of the car.

The first assignment of error challenges the validity of the jury verdict. The defendant contends that it is fatally defective and that no valid judgment can be entered thereon. With this contention we agree.

*Lane v. Commonwealth*, 190 Va. 58, 55 S. E. 2d 450, is controlling of this issue. In that case Lane was indicted under the Maiming Act, § 4402, Code 1942 (now § 18.1-65). The jury returned a verdict which read:

" 'We, the jury, find the defendant Barron Lane guilty of *unlawful wounding* and fix his punishment at three (3) years in the State Penitentiary.' (Italics added)." 190 Va. at p. 63.

The trial court set this verdict aside and a new trial was awarded the defendant. At the second trial the jury found him guilty of "unlawfully wounding Archer G. Tate, with intent to maim, disfigure, disable or kill * * *." His punishment was fixed at 3 years in the penitentiary. On appeal from the judgment entered on this verdict one of the errors assigned involved the effect of the verdict rendered in the first trial. We said:

"In this case the jury, on the first trial, found the defendant guilty of 'unlawful wounding,' merely. The verdict failed to name the person wounded, to recite that the wounding was done 'with intent to maim,' etc., or to state that it was committed 'as charged in the indictment.' It was not a complete finding in due form upon the issue presented and was silent on some of the material elements of the offense charged. It was fatally defective, and no valid judgment of the court could have been rendered upon it. 190 Va. at p. 66.

\* \* \* \* \*

"Here the first clause of the verdict found Lane guilty of an alleged offense not embraced in the statute under which he was being tried; the second clause fixed his punishment as though he had been found guilty of a felony. The fact that the jurors used the word 'unlawful' instead of the word 'malicious' clearly indicates that they found him not guilty of malicious intent. These considerations show that the jury intended to find the defendant guilty of unlawful assault, with intent to maim, etc., and to acquit him of the charge of malicious assault. It is equally clear that they did not find him guilty of a misdemeanor. We, therefore, hold that the trial court did not err in overruling the defendant's plea of former jeopardy and

in allowing him to be tried upon the charge of unlawful assault, with intent to maim, etc." 190 Va. at p. 69.

In the case at bar the verdict found the defendant guilty of unlawful maiming. We have held that "unlawful wounding," "unlawful shooting" and "unlawful stabbing" standing alone are not crimes embraced under § 18.1-65. *Lane* v. *Commonwealth, supra,* 190 Va. at p. 68. Unlawful maiming takes the same status. Here, as in those instances, the verdict failed to recite that the wounding was done with the requisite "intent to maim, disfigure, disable, or kill" or to state that it was committed "as charged in the indictment." The failure to name the person wounded in the verdict was not of itself fatal (*Hoback* v. *The Commonwealth,* 28 Gratt. (69 Va.) 922, 929), but the failure to recite the requisite intent to maim, etc. or to state "as charged in the indictment" rendered the verdict and the judgment entered thereon a nullity.

The use of the word "unlawful" rather than "malicious" in the verdict clearly shows that the defendant was acquitted of malicious wounding with intent to maim, etc. The attempted conviction of unlawful wounding necessarily manifests an acquittal of malicious wounding. The crimes of "malicious maiming," "unlawful maiming," and "assault and battery" were defined and the punishment for each offense was set out in Instruction C-4. The defendant's punishment was fixed at five years in the penitentiary as though he had been convicted of a felony. Under these circumstances a conviction of a misdemeanor could not have been intended. Upon a new trial of the case the defendant cannot lawfully be convicted of malicious wounding or maiming with intent to maim, etc. He may, however, be lawfully tried and convicted of the alleged crime of unlawful wounding or maiming with intent to maim, disfigure, disable, or kill, or he may be convicted of the lesser offense, assault and battery. *Lane* v. *Commonwealth, supra,* 190 Va. at pp. 66, 67; *Stuart* v. *The Commonwealth,* 28 Gratt. (69 Va.) 950, 954, 955.

Several of the 14 assignments of error relate to the giving and refusing of certain instructions. It is contended that the court erred in refusing Instructions Nos. 1, 2 and 7 and in giving Instruction No. 2-A. By such action the defendant insists that he was deprived of his right to have his theory of the case presented to the jury.

It cannot be questioned that both the Commonwealth and the

defendant are entitled to appropriate instructions telling the jury the law applicable to each version of the case, provided such instructions are based upon the evidence adduced. *Jones* v. *Commonwealth*, 187 Va. 133, 144, 145, 45 S. E. 2d 908; *Wade* v. *Commonwealth*, 202 Va. 117, 123, 124, 116 S. E. 2d 99. And each party may employ language of its own choosing so long as it "is in keeping with the law." *Jeffress* v. *Virginia Ry. & P. Co.*, 127 Va. 694, 714, 104 S. E. 393; 10 M. J., Instructions, § 7, p. 194.

The defendant's theory of the case was embodied in refused Instructions Nos. 1 and 2. Instruction No. 1 reads:

"The Court instructs the jury that, at the time of the difficulty, Officer B. J. Atwood testifies that he was undertaking to arrest Jack Banner without a warrant, on the assumption that the said Jack Banner was drunk in a public place, in his presence; that as such police officer the said Officer B. J. Atwood had no legal right or authority to arrest or attempt to arrest the Defendant upon said charge without a warrant, unless the Defendant was drunk or reasonably appeared to the Officer to be drunk, in a public place, in the presence of said Officer B. J. Atwood. If, therefore, you believe from the evidence in this case; that at the time the said Officer B. J. Atwood undertook to arrest the Defendant, the Defendant was not drunk in a public place and did not reasonably appear to the Officer to be drunk in a public place, and that the said Officer B. J. Atwood had no warrant for his arrest, then such arrest or attempted arrest was illegal, and the Defendant had the legal right to resist arrest, even to the extent of taking the Officer's life, if the Defendant believed and had reasonable grounds to believe that he was in danger of death or great bodily harm at the hands of Officer B. J. Atwood, and if you believe the facts are as above stated, and that Jack Banner shot Officer B. J. Atwood under the reasonable belief that such action was necessary to save his own life, or to save himself from serious bodily harm, then he was not guilty of the offense with which he is charged, and you should so find."

After this instruction was submitted and refused, counsel for the defendant asked that the language "The evidence shows the officer had no warrant for arrest" be substituted for the words "Officer Atwood testifies" etc., found in the first sentence. A written amended instruction was not tendered. Exception was taken to the court's action in refusing the instruction as originally offered and also as amended.

The instruction is a finding one and is not complete. It fails to include an essential element of self defense. An illegal arrest of itself would not give the defendant the right to shoot or take the officer's life. The theory of self defense is not available to the aggressor. *Lamb* v. *Commonwealth*, 141 Va. 481, 488, 126 S. E. 3; 2 M. J., Assault and Battery, § 7, p. 112. The latter part of the instruction should have included a statement "if the defendant was not the aggressor," or words of like import, along with other facts stated which must be believed. See *Harper* v. *Commonwealth*, 196 Va. 723, 729, 85 S. E. 2d 249. Thus it was not error to refuse this instruction.

■ Instruction No. 2 dealt principally with the defendant's right to resist an illegal arrest. It was long, confusing and misleading and was properly refused by the court. The first paragraph would have told the jury that if the defendant was in his closed automobile in the nighttime on the highway and not visible to persons outside of the car, the defendant was not violating the statute forbidding drunkenness in public, whether he was "intoxicated" or not, and that Atwood had no right to arrest or attempt to arrest him on that charge. There was no evidence that Trooper Atwood arrested or attempted to arrest the defendant while he was in the automobile. The defendant's evidence was that no attempt to arrest him was ever made either in the car or outside of it. The Commonwealth's evidence was that the defendant was arrested after he voluntarily alighted from the vehicle and was on the public highway. There was a complete lack of evidence, as the trial court ruled, to support this part of the instruction.

Having refused Instructions Nos. 1 and 2, the court proceeded to draft Instruction No. 2-A, attempting to cover the defendant's theory of the case. The giving of this instruction was assigned as error. The record shows that the defendant objected to the instruction, but it fails to show that an exception was taken to the granting of it. However, since a new trial will be had, it should be noted that the instruction was not proper. The defendant's chief complaint is the inclusion of the italicized clause in the first paragraph, which follows:

"The Court instructs the jury that if you believe from the evidence that Jack Banner was riding in the automobile being driven by Claude Rickman on the night in question along the public highway and that he was not visible to persons who might be on, along or near the highway and on the outside of the said automobile, and did not

thereafter voluntarily expose himself so that he might be seen by other persons who might be along, on or near the highway and outside of the automobile, then he was not violating the law against drunkenness; and if Jack Banner was so riding in the automobile so that he would not be visible to persons who might be outside of the automobile as aforesaid and did not voluntarily expose himself so that he would be seen by other persons who might be outside of the automobile, as aforesaid and was commanded by the Officer, Atwood, to get out of the automobile and he did not do so of his own volation (sic), then the Officer, Atwood, did not have the right to arrest Jack Banner *unless he believed and had reasonable grounds to believe that Jack Banner was in his presence drunk in a public place prior to the time he was commanded by the Officer to get out of the automobile.*" (Italics added).

As pointed out by the defendant the qualification complained of is without evidence to support it. There was no evidence that Atwood believed or had reason to believe that the defendant was in his presence drunk in a public place prior to the time he was commanded by Atwood to get out of the car, if he was so commanded. Indeed, there was no showing that Atwood had seen the defendant on the night in question except in the stopped vehicle and outside of it where the shooting occurred.

A similar qualification was included in the second paragraph of the instruction and for the reasons stated above should have been omitted.

■ Next, it is contended that the court erred in refusing Instruction No. 7. It provided:

"The Court instructs the jury that, in passing upon the danger, if any, to which the accused, Jack Banner, was exposed, you will consider the circumstances as they reasonably appeared to the accused and draw such conclusions from these circumstances as he could reasonably have drawn, situated as he was at the time; in other words, the Court instructs you that the accused is entitled to be tried and judged by the facts and circumstances as they reasonably appeared to him and not by any intention that may or may not have existed in the mind of Trooper Atwood."

This instruction was a proper statement of the law and should have been given under the evidence adduced. See *Taylor* v. *Commonwealth,* 185 Va. 224, 227, 228, 38 S. E. 2d 440.

We find no prejudicial error in the remaining assignments of error.

For the reasons stated, the judgment of the trial court is reversed and the case remanded for a new trial, in accordance with the views herein expressed.

*Reversed and remanded.*