JIMMIE HUGENE WOODSON, JR.

v.

COMMONWEALTH OF VIRGINIA

Record No. 921171

April 16, 1993

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Hassell, JJ., and
Cochran, Retired Justice

John B. Mann *(Levit & Mann,* on brief), for appellant.
Robert Q. Harris, Assistant Attorney General *(Mary Sue Terry, Attorney General,* on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

The primary issue in this Fourth Amendment case is whether inculpatory evidence was properly admitted. To decide this question, we must determine when the defendant was "seized" within the meaning of the Fourth Amendment.*

About 7:45 p.m. on November 24, 1988, Detective D.R. Carter was stationed at the front entrance of a house in the City of Richmond while other police officers were executing a search warrant for drugs inside the house. As Carter stood at the front entrance making sure that no one entered or left the house during the search, he noticed a car being driven slowly by the house and at least one of its passengers looking in Carter's direction. After passing the house, the driver stopped the car, and one passenger exited and walked up the street toward the house. Just after the former passenger turned "to come to the front door," he "looked right straight at" Carter from a distance of about 12 feet. Carter recognized him as Jimmie Hugene Woodson, Sr. (Woodson, Sr.), a former police officer "now convicted of drugs."

Although Carter said "there is no need to walk away, Mr. Woodson," Woodson, Sr. "then rapidly turned" and walked away from the house and the car. Carter was not in uniform, but he pulled his police badge, which he wore around his neck, to the outside of his shirt and walked over to the vehicle. Carter had his automatic pistol in his right hand "down to [his] right side." Carter knew that the police were still looking for one person connected with the events leading to the issuance of the search warrant. As Carter walked to the driver's door, he said "Police Officer. Gentlemen, put your hands where I can see them."

Both passengers immediately complied, but Jimmie Hugene Woodson, Jr. (Woodson), the driver, turned to his right and bent down to his right side. Carter could not see "what he was grabbing for," but when Carter opened the car door, Woodson had a large revolver in his right hand.

Carter grabbed Woodson's right arm with his left hand, held his own pistol against Woodson's neck with his other hand, and told Woodson that if he did not drop the revolver, he, Carter, would shoot him. Woodson dropped the revolver to the floor, but continued to struggle as he tried to get his hand in his right front pants pocket. Carter called for help.

---

* The Fourth Amendment to the Constitution of the United States protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

As Detective P.H. Brunson entered the front passenger's side of the vehicle, Carter observed that Woodson again had his hand "back down in the floorboard," and Brunson noticed that Woodson had his hand on the butt of the gun. Additional police officers were required to remove Woodson from the car and then handcuff his hands behind his back.

During the struggle, Detective J.E. King noticed that Woodson kept trying to reach into his right pants pocket before he was handcuffed. As King "went to check" this pocket after Woodson was handcuffed, Woodson said, "Okay. I am an addict. You have got me. It is in my right front pocket." When King reached into that pocket, he retrieved a small, self-sealing plastic bag, which contained "a $20.00 bill folded that had white powder inside of the $20.00 bill." The powder later was determined to be cocaine. Officer John Bukavich, another officer who assisted in subduing Woodson, found a small amount of marijuana in Woodson's right front shirt pocket.

Woodson was charged with: (1) possession of marijuana; (2) possession of cocaine; (3) obstructing Carter in the performance of his duties as a police officer; and (4) possession of a firearm while in possession of cocaine. A jury convicted Woodson of the first three charges, and judgment was entered on those verdicts. Woodson appealed these convictions to the Court of Appeals, which affirmed. *Woodson v. Commonwealth*, 14 Va. App. 787, 421 S.E.2d 1 (1992). We awarded Woodson this appeal.

Woodson contends that the cocaine and marijuana were inadmissible in evidence because they were the fruit of an unreasonable seizure of his person in violation of his Fourth Amendment rights. As noted previously, we must first determine *when* Woodson was "seized" within the meaning of the Fourth Amendment.

■ The Commonwealth relies upon *California v. Hodari D.*, ___ U.S. ___, 111 S.Ct. 1547 (1991). In *Hodari D.*, a police officer did not have the requisite reasonable suspicion that Hodari was engaged in some criminal activity when the police officer attempted to stop and question him. Yet the cocaine which Hodari discarded while fleeing from the police officer was properly admitted in evidence. The Supreme Court justified its admission upon two grounds: (1) that the drugs were abandoned by Hodari and lawfully recovered by the police, and (2) that the police officer's observation of "the rock of cocaine, at least if he recognized it as such, would provide

reasonable suspicion for the unquestioned seizure when he tackled Hodari.'' ___ U.S. at ___, 111 S.Ct. at 1549.

Hodari relied, and Woodson relies, upon *United States v. Mendenhall*, 446 U.S. 544 (1980), in arguing that there had been a seizure of their persons in violation of the Fourth Amendment. According to *Mendenhall*, ''[a] person has been 'seized' within the meaning of the Fourth Amendment *only if*, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'' *Id.* at 554 (emphasis added).

■ However, as the Court noted in *Hodari D.*, the *Mendenhall* language '' 'only if' . . . states a *necessary*, but not a *sufficient* condition . . . for [a Fourth Amendment] seizure effected through a 'show of authority.' '' *Hodari D.*, ___ U.S. at __, 111 S.Ct. at 1551 (emphasis in original). And because Hodari did not submit to the police officer's ''show of authority'' but fled from the officer, the Supreme Court held that he was not seized within the meaning of the Fourth Amendment. Thus, the issue in *Hodari D.* was not what a reasonable person would have assumed under the circumstances, but what the accused actually did in response to the police officer's show of authority.

Claiming that he was seized when Carter ordered him to place his hands where Carter could see them, Woodson attempts to distinguish *Hodari D.* on the ground that he was confined to the vehicle and that it is reasonable to assume that, had he attempted to leave the vehicle, Carter would have seized him by physical force. However, Woodson overlooks the fact that he had armed himself, and this gave rise to an inference that he did so to resist any effort by Carter to restrain his movement. And in deciding whether Woodson submitted to Carter's order, we see no essential difference between Woodson's act in arming himself and Hodari's act in fleeing from the police officer.

■ Thus, as in *Hodari D.*, because Woodson did not submit to Carter's command, we must focus upon what Woodson did, not what a reasonable person would have assumed under the circumstances. Considered in that light, it is apparent that Woodson had not been seized when Carter ordered him to place his hands where Carter could see them because Woodson did not submit to Carter's authority; instead, he armed himself with the apparent intention of

shooting Carter. And when Woodson did this, he provided the requisite reasonable suspicion of criminal activity that justified his seizure.

Accordingly, Woodson's Fourth Amendment rights were not violated thereafter when the cocaine and marijuana were discovered during the search incident to that seizure. *U.S. v. Waupekenay*, 973 F.2d 1533, 1537 (10th Cir. 1992); *U.S. v. Bailey*, 691 F.2d 1009, 1016-1018 (11th Cir. 1982) (police may arrest for "new, distinct crime" by defendant in response to unlawful police conduct). Therefore, the cocaine and marijuana were properly admitted in evidence. *Bailey* at 1018-1019. And because Woodson's statements that he was an "addict" and that "[i]t [the cocaine] is in my right front pocket" provide ample justification for a finding of his knowing and intentional possession of the cocaine, we find no merit in Woodson's contention that the evidence was insufficient on this count.

Finally, we consider Woodson's conviction for attempting to impede Detective Carter in the performance of his duties. Former Code § 18.2-460(A) (1988) (now Code § 18.2-460(B) (Cum. Supp. 1992)) provided that "[i]f any person, by threats, or force, knowingly attempts to intimidate or impede . . . any law-enforcement officer, lawfully engaged in his duties as such, . . . he shall be deemed to be guilty of a Class 1 misdemeanor." Woodson claims that he cannot be convicted of this charge because he "was not under arrest and was not the target of any investigation by Detective Carter" and, therefore, had the right to "resist an unlawful arrest." Here, however, the evidence was sufficient to justify the jury's conclusion that Carter was readily identifiable as a police officer, that he was attempting to question Woodson peacefully and without unnecessary force, and that Woodson armed himself with the intent to shoot Carter, if need be, to avoid submission to Carter's authority. Under those circumstances, the jury reasonably could have concluded that Woodson forfeited whatever right he had to resist Carter. *See Banner v. Commonwealth*, 204 Va. 640, 647, 133 S.E.2d 305, 310 (1963) ("An illegal arrest of itself would not give the defendant the right to shoot or take the officer's life"). Accordingly, we are of opinion that the evidence supports Woodson's conviction for attempting to impede Carter in the performance of his duties.

For these reasons, we will affirm the decision of the Court of Appeals.

*Affirmed.*

JUSTICE LACY, concurring.

Woodson's appeal is premised on his assertion that the entire chain of events flowed from Officer Carter's approach of the Woodson vehicle. That approach, Woodson argues, was illegal under *Terry* v. *Ohio*, 392 U.S. 1 (1968), because Officer Carter did not have any reasonable suspicion that Woodson was engaged in criminal activity. Although not addressed by the majority, this premise is flawed.

Woodson confuses a *Terry* investigatory stop with a police officer's right to approach individuals and ask questions. *Florida* v. *Royer*, 460 U.S. 491, 497 (1983); *Baldwin* v. *Commonwealth*, 243 Va. 191, 196-97, 413 S.E.2d 645, 648 (1992). In a *Terry* stop, the officer has the right to approach and detain individuals because he has a reasonable suspicion that they are engaging in some type of criminal activity. Here, Carter, like any police officer, had the right to approach a car parked on a public street for investigation purposes. *Id.*

Woodson is correct, however, that Carter's subsequent action ordering the vehicle's occupants to put their hands where he could see them, extends beyond mere inquiry. This demand was a show of authority reflecting Carter's intent to stop, detain, or seize the occupants of the Woodson vehicle. At that point, the encounter was within the category of an investigatory stop under *Terry*. Nevertheless, whether Carter had the requisite reasonable suspicion to make this demand is relevant only if, in fact, Carter's command constituted a seizure as Woodson contends. As concluded by the majority, Woodson was not seized until after he had reached for his gun. Carter's actions were clearly justified at that point, and did not violate Woodson's Fourth Amendment rights.

Woodson asserts that his conviction for obstruction of justice was improper because he had acted lawfully in the exercise of his right to resist an illegal arrest rather than to impede justice. This argument is also based on a flawed premise: that the only obstruction activity was Woodson's resistance to an allegedly unlawful arrest. As discussed above, there was no arrest until after the obstructive act, *i.e.*, Woodson grabbing for his gun, and, therefore, the subsequent arrest was not illegal. Furthermore, Woodson forfeited whatever right he had to resist arrest prior to this point, as noted by the majority, by his chosen method of resistance. *Banner* v. *Commonwealth*, 204 Va. 640, 647, 133 S.E.2d 305, 310 (1963).

As the Commonwealth argued, Carter was involved in the execution of a search warrant and, as part of that duty, he was entitled to question other persons in the vicinity regarding the known criminal activity at the house. Carter had a right to approach the parked vehicle in discharging his duties of investigation. Woodson's actions in arming himself and "failing to cooperate" with that investigation support the jury's finding that Woodson intended to, and did, impede Carter's investigation.