## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Frederick Scott

May 27, 2005

Case No. 05-23

BY JUDGE EDWARD L. HOGSHIRE

In this criminal action, Frederick Scott has filed a motion to suppress evidence and incriminating statements made by him. For the reasons articulated below, this Court grants Defendant's motion to suppress.

*Statement of Facts*

On September 30, 2004, at approximately 1:23 p.m., Officer J. F. Brown of the Charlottesville Police Department was on patrol in the Hardy Drive area of the city. Specifically, he was nearby the housing complex operated by the Charlottesville Redevelopment Housing Authority. Firearms are not permitted on that property. (Suppression Hearing Transcript [hereinafter Tr.] at 6-8.) Brown received a radio communication reporting that a man with a gun was in the area of the 826 building of the housing development, sitting on a bench. The subject was described as a black male with dreadlocks, wearing a white shirt and dark pants. (Tr. at 8-9.) The report was based upon an anonymous tip that had been communicated to the dispatcher; Brown had no additional information of the situation. (Tr. at 18-19, 26.)

Subsequent to the dispatch, Officer Brown walked along the back side of the housing complex until he reached unit 826 C. He was able to

see over the louvered aluminum fence that surrounded the unit's porch, as well as through the partially open gate. (Tr. at 14-17.) In so doing, Brown noticed Defendant, matching the description offered by the dispatch report, seated at a table with several other people. (Tr. at 18.) Brown drew his sidearm, keeping it pointed at the ground, and entered the fenced area. He stood approximately eight feet from the individuals and said to Defendant, "Let me see your hands." (Tr. at 20-21.) In response, Defendant began to move his hands up, but then started to bring them back down again. Again Brown said, "Let me see your hands and keep them up!" The Defendant complied. Brown then said, "I want you to stand up." As Defendant was standing up, Brown announced, "I'm here for a call of a man with a gun," and Defendant replied, "I have a gun." (Tr. at 21.)

After Defendant reached a standing position, Brown noticed a gun on the place where he had been sitting. The gun was seized, and Defendant was taken into custody. (Tr. at 23-25.)

## Questions Presented

1. Did the anonymous tip here provide sufficient indicia of reliability to justify an investigatory stop under the Fourth Amendment?

2. Did the Defendant, who raised his hands in response to an official show of authority, yield to that authority so as to create a seizure under the Fourth Amendment?

## Analysis

The United States Supreme Court has held that an anonymous tip must be "suitably corroborated" in order to establish "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Alabama v. White*, 496 U.S. 325, 327 (1990). In *White*, which the Court conceded was a "close case," such indicia of reliability were provided by the anonymous informant's particularized predictions of the subject's future movements, which subsequent police observation confirmed as accurate. *Id.* at 332. Although the Court held that being able to correctly predict an individual's future actions suggests a degree of familiarity with their affairs robust enough to justify the stop, it was careful to note that "having such knowledge does not necessarily imply that the informant knows, in particular, whether that person is [engaged in the criminal activity]." *Id.*

The Supreme Court has since declined to extend findings of reliability to anonymous tip cases in which the informant merely provides "readily observable" information, such as a subject's location and appearance. *Florida v. J.L.*, 529 U.S. 266, 272 (2000). The *J.L.* case concerned an anonymous tip asserting that a black juvenile standing at a certain bus stop and wearing a plaid shirt was carrying a gun. On the basis of that information alone, police stopped the individual, frisked him, found the firearm, and arrested him. *Id.* at 269. The Court ultimately found the stop to be invalid under the Fourth Amendment, holding that an anonymous tip must be reliable in its accusation of criminal activity, not merely in its ability to identify a given individual. *Id.* at 272.

The Virginia Supreme Court has adhered to this line of reasoning. In *Jackson v. Commonwealth*, 267 Va. 666, 681 (2004), the Court followed *J.L.* and held that an anonymous call concerning a firearm was insufficient to justify a "Terry" stop. The Court concluded that the tip "lacked sufficient information to demonstrate the informant's basis of knowledge and to establish the 'requisite quantum of suspicion'." *Id.* at 677. *See also Harris v. Commonwealth*, 262 Va. 407, 410, 417 (2001) (holding that an anonymous tip accusing a black male of being armed and selling drugs at a specified street corner did not provide officers with the "reasonable, articulable suspicion" necessary for a valid seizure).

In the present case, the anonymous caller did not provide any predictive information, but rather relayed only easily observable information, such as the subject's race, hairstyle, and clothing. Although such characteristics may have been helpful to Officer Brown in identifying Defendant, they demonstrated neither an extensive degree of familiarity with the subject's actions, nor any independent reliability in terms of the purported criminal activity. As a result, the informant's firearm allegation amounted to a mere conclusory allegation, and the anonymous tip falls within that group contemplated by *Florida v. J.L.* as possessing insufficient indicia of reliability for purposes of a police seizure.

The United States Supreme Court adheres to the rule that a seizure has occurred when there is any application of physical force, or when there is a show of authority to which the subject yields. *See California v. Hodari D.*, 499 U.S. 621, 628 (1991). In *Hodari D.*, the defendant discarded a rock of crack cocaine while being pursued by a police officer. *Id.* at 624. The Court held that the drugs were admissible as evidence at trial, because in fleeing from the police, the subject had not yet submitted to his authority, and therefore no seizure had occurred. *Id.* at 628. Likewise, in *Woodson v. Commonwealth*, 245 Va. 401 (1993), the

Virginia Supreme Court held that the defendant had not been seized when a police officer asked to see his hands, because he instead reached for a gun and, in so doing, refused to yield to the show of authority. *Id.* at 405.

The Commonwealth argues that facts of the present case are analogous to those of the two preceding decisions. Under the Commonwealth's theory, since Officer Brown did not specifically inquire as to whether anyone had a gun, the Defendant's inculpatory statement was unsolicited and made before he had yielded to the officer's authority. The statement therefore served to corroborate the criminal activity element of the anonymous tip, providing Brown with information he had previously lacked and granting him the authority to carry out the seizure. (Brief for the Commonwealth at 1-2.)

However, according to Brown's own testimony, Defendant had raised his hands in response to Brown's request *before* admitting to possession of a gun. (Tr. at 21-23.) Such an action is easily construed as submission to the officer's authority. Furthermore, given the fact that Brown was in police uniform with his gun drawn and giving orders, it would be a stretch to say that Defendant's statements were entirely unsolicited and not the product of his yielding to police authority. Therefore, the evidence was gathered as a result of a Fourth Amendment seizure.

In accordance with the foregoing analysis, the Court will grant Defendant's motion to suppress the evidence and incriminatory statements against him.