COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge O'Brien and Senior Judge Humphreys
Argued at Richmond, Virginia


DARNELL ANTHONY DAVIS

v.      Record No. 1899-23-2

COMMONWEALTH OF VIRGINIA                    MEMORANDUM OPINION* BY
                                        CHIEF JUDGE MARLA GRAFF DECKER
                                                JUNE 17, 2025

DARNELL ANTHONY DAVIS

v.      Record No. 0062-24-2

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF KING GEORGE COUNTY
                            Herbert M. Hewitt, Judge

        Elena Kagan, Assistant Public Defender (Kelsey Bulger, Deputy
        Appellate Counsel; Virginia Indigent Defense Commission, on
        briefs), for appellant.

        Anderson W. Peake, Assistant Attorney General (Jason S. Miyares,
        Attorney General, on brief), for appellee.


        Darnell Anthony Davis appeals his convictions, following a jury trial, for destruction of

property, assault and battery of a law enforcement officer, and obstruction of justice in violation

of Code §§ 18.2-57, -137, and -460. Davis argues that evidence was insufficient to support his

convictions. For the following reasons, we disagree and affirm the convictions.


---

        * This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On the afternoon of January 11, 2023, Graham Williams approached the intersection of Route 3 and a second highway in King George County. While stopped at a traffic light, he observed a car roll 360 degrees over the highway median and land "upright" again "on all four tires." An off-duty firefighter and emergency medical technician, Williams pulled over and approached the car and its driver, Davis. Williams noticed a strong odor of marijuana coming from the car and attempted to get Davis's attention to see "if he was okay." When Davis did not respond, Williams, based on his medical training, thought Davis might be in shock. Williams turned off the ignition and removed the key. Davis, meanwhile, gathered some of his belongings and got out of the car. Williams asked Davis to wait for a medical evaluation, but Davis began walking westbound on Route 3 in the eastbound lanes. Williams called 911, describing the driver and his direction of travel.

Sergeant David Marcuse, Lieutenant Ronald Govan, and Deputies Hadyn Nobles and Alexander Hamilton, all of whom were with the King George County Sheriff's Office, responded to the report of the overturned car. The dispatcher described the driver and stated that he was walking westbound along Route 3.

When Sergeant Marcuse arrived at the intersection, he found the unoccupied car in the median, and Williams was nearby. Marcuse located Davis's driver's license in the abandoned car, and Williams verified that Davis had been the driver. Sergeant Marcuse noted that the car had a strong odor of marijuana and contained several small, empty alcohol bottles.

---

[1] On appeal, the facts are recited "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that the Court "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn []from" the evidence. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

As Lieutenant Govan approached the area where the crash occurred, he saw a man matching the description of the driver walking away from the intersection on Route 3. The lieutenant positioned his patrol car in front of the pedestrian, activated his emergency equipment, and got out. Govan called out to the man, asking Davis twice to "stop and talk to [him]." Davis "did not comply" and continued to walk westbound, on the shoulder of the eastbound portion of the road, against the flow of traffic. Davis then crossed to the westbound lanes, walking in the same direction as the traffic, "[i]n the middle of the fast lane." Lieutenant Govan returned to his patrol car and advised dispatch that Davis refused to stop when asked. Afterward, Govan made a U-turn and drove behind Davis with his emergency lights activated.

Around that same time, while en route to the accident scene, Deputy Nobles received more information from dispatch and spotted Davis about half a mile from the intersection. Davis was walking west along Route 3 while Lieutenant Govan followed in his patrol car. Deputy Nobles pulled over and approached Davis on foot. Davis was walking in the left turn lane at the time, despite the presence of an unpaved median adjacent to that lane. Nobles approached Davis and attempted to handcuff him. Rather than comply, Davis advanced toward the deputy, "swatted [his] hand away," and shoved him. The pair then struggled and fell to the ground. While Davis continued to resist, Lieutenant Govan sprayed him with "oleoresin capsicum," and Davis was handcuffed. After Davis's altercation with Deputy Nobles, Davis was arrested.

At trial, Deputy Nobles described his encounter with Davis in detail. He agreed that when he initially approached Davis, he told Davis to "turn around for [him]." When Davis failed to comply and continued walking, the deputy repeated his instruction and told Davis to do it "right now" as he reached toward Davis's wrist. Nobles testified that he "was going to detain" Davis and "put him in handcuffs."

After Davis was handcuffed and arrested for the assault and battery of Deputy Nobles, emergency medical personnel decontaminated Davis's face due to the use of the pepper spray. The officers then put him in the back seat of Deputy Hamilton's patrol SUV.

While Deputy Hamilton transported Davis, he thrashed, kicked, and spat. Davis's unruly behavior continued for fifteen minutes until he suddenly stopped moving. Deputy Hamilton repeatedly attempted to engage Davis in conversation, but Davis did not respond. Concerned about Davis's welfare, Hamilton stopped the SUV to check on him.

When Deputy Hamilton opened the rear door, Davis immediately resumed his combative behavior and "requested another decontamination of his face." Hamilton removed Davis from the car and attempted to decontaminate Davis's face by wiping it with Davis's shirt.[2] One of the deputies told Davis they had almost reached the jail, where the staff would "clean [him] up even more." The deputies also adjusted Davis's handcuffs at his request. After several minutes of tending to Davis, the deputies asked him to get back into the patrol SUV. Davis insisted that he be transported by ambulance even though Hamilton "explained . . . that was not an option."

After Davis refused several orders to return to the patrol vehicle, Deputy Hamilton and Detective Garrant used a "push-pull technique" to return Davis to Hamilton's SUV. Hamilton pushed Davis into the back seat from one side of the SUV, while Detective Garrant pulled Davis from the opposite side. In response, Davis cursed, thrashed, kicked, and refused to place his legs inside the vehicle. Davis told Garrant to "get the fuck off" him and threatened to spit on him. Davis then leaned back and spat in Detective Garrant's face twice, causing some of the spittle to land in the detective's mouth and eyes.

---

[2] Deputy Hamilton explained that he did not have the proper equipment to decontaminate Davis with anything other than Davis's shirt.

The jury convicted Davis of destruction of property, two counts of assault and battery of a law enforcement officer, and obstruction of justice.[3]  He was sentenced to ten years and six months of incarceration, with six years suspended, and a $250 fine.

ANALYSIS

Davis challenges the sufficiency of the evidence to support his convictions for destruction of property, assault and battery of a law enforcement officer, and obstruction of justice.

I.  Procedural Default on Destruction-of-Property Conviction

Davis contends that the evidence was insufficient to support his conviction for destruction of property.  He argues that by asking the trial court to "strike all [the] charges," he sufficiently preserved this argument for appeal.  We disagree.

Rule 5A:18 requires that an "objection [be] stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  "Under this rule, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal."  *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc), *aff'd by unpub'd order*, No. 040019 (Va. Oct. 15, 2004).

Accordingly, this Court "will not consider an argument on appeal [that] was not presented to the trial court."  *Smith v. Commonwealth*, 65 Va. App. 288, 303 (2015) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)).  "Specificity and timeliness undergird the contemporaneous-objection rule[ and] animate its highly practical purpose . . . ."  *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019); *see Brown v. Commonwealth*, 279 Va. 210, 217 (2010).  The Supreme Court has made clear that "[n]ot just any objection will do.  It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in

---

[3] Davis was also tried for reckless driving, driving under the influence, and preventing a lawful arrest.  The trial court granted Davis's motion to strike the reckless-driving and driving-under-the-influence charges.  The jury acquitted him of the charge of preventing a lawful arrest.

time to do something about it." *Bethea*, 297 Va. at 743 (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). It also "alert[s] opposing counsel to the issue" so that counsel has an opportunity to take appropriate action. *See Commonwealth v. Carolino*, ___ Va. ___, ___ (Dec. 12, 2024). In a jury trial, where the defendant elects not to introduce evidence of his own, he may preserve his objections to the sufficiency of the evidence in a motion to strike at the close of the Commonwealth's case or in a timely post-trial motion. *See Murillo-Rodriguez v. Commonwealth*, 279 Va. 64, 83-84 (2010).

Davis made two separate motions to strike the evidence. He failed, however, to make a specific argument about the destruction-of-property charge in either one. Davis also did not challenge the sufficiency of the evidence to support the destruction-of-property conviction in a post-trial motion to set aside the verdict. His argument about the destruction-of-property charge, therefore, is procedurally defaulted.

Davis suggests that under the holding in *Commonwealth v. Herring*, 288 Va. 59 (2014), his argument was sufficient to preserve his objection. In *Herring*, defense counsel argued in his motion to strike "that the evidence was insufficient to prove" *a single specific offense*, "abduction[,] '*according to the statute*.'" *Id.* at 73 (emphasis added). Counsel both named the specific offense and stated that the evidence failed to prove the statutory requirements of that offense. *See id.* The Supreme Court held that this argument adequately "challenged all of the elements [contained in] the [abduction] statute . . . , including intent to deprive the victims of their personal liberty." *Id.* at 73-74.

This scenario stands in marked contrast to what took place in Davis's case. Here, Davis's defense counsel, at best, stated an *intention* to move to strike seven *unnamed* charges at the close of the Commonwealth's case. He then presented specific argument about six charges but never mentioned the destruction-of-property charge, by either name or indictment number. He also did

not cite the statute or any of its elements.  Then, after opting not to present evidence of his own, he asked the court to "strike [unspecified] charges" in the context of "renew[ing] all [his] prior motions upon the arguments previously presented"—arguments that did not mention destruction of property.  The amended conviction order confirms that Davis's motion to strike did not cover the destruction-of-property charge because the order does not include that charge in the list of offenses that Davis moved to strike.  To hold that these actions preserved an objection to a single unspecified element of an unobjected-to offense would eviscerate the requirement that an objection must be specific.  That we will not do.

Although Rule 5A:18 recognizes exceptions for good cause or to meet the ends of justice, Davis does not ask the Court to invoke the exceptions, and we will not do so sua sponte.  *See, e.g.*, *Edwards*, 41 Va. App. at 761, *cited with approval in Jones v. Commonwealth*, 293 Va. 29, 39 n.5 (2017).  As a result, Davis's appellate challenge to his destruction-of-property conviction is waived.

## II.  Sufficiency of the Evidence

Davis contends that the trial court erred when it denied his motion to strike the remaining charges against him.  His arguments suggest that the Commonwealth failed to present "a *prima facie* case [of two counts of assault and battery of a law enforcement officer and obstruction of justice] for consideration by the [jury]."  *Vay v. Commonwealth*, 67 Va. App. 236, 249 (2017) (quoting *Hawkins v. Commonwealth*, 64 Va. App. 650, 657 (2015)).

The appellate court reviews de novo the question of what elements comprise an offense. *Lawlor v. Commonwealth*, 285 Va. 187, 223 (2013).  However, "[w]hether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong."  *Vay*, 67 Va. App. at 249 (quoting *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014)).  In reviewing such factual findings, "we examine the evidence in the light most

favorable to the Commonwealth, the prevailing party at trial, and grant it the benefit of all reasonable inferences gleaned []from" that evidence. *Durham v. Commonwealth*, ___ Va. ___, ___ (Aug. 1, 2024). "[T]he only relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Wilkerson*, ___ Va. ___, ___ (Feb. 20, 2025) (second alteration in original) (quoting *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024)). "If . . . the evidence and the [related] inferences are 'sufficient to support the conviction, the reviewing court is not permitted to substitute its own judgment for that of the trier of fact, even if its opinion might differ from the conclusions reached by the trier of fact.'" *Garrick*, 303 Va. at 182 (quoting *Jordan v. Commonwealth*, 286 Va. 153, 156-57 (2013)). It is in light of these well-established principles that the Court reviews Davis's specific challenges to the sufficiency of the evidence to support his convictions.

### A. Assault and Battery of a Law Enforcement Officer

#### 1. The Offenses

A person who "commits an assault or an assault and battery against another knowing or having reason to know that such other person is . . . a law-enforcement officer . . . is guilty of a Class 6 felony." Code § 18.2-57(C). Relevant here, a law-enforcement officer is defined to include "any full-time or part-time employee of a . . . sheriff's office that is part of or administered by the Commonwealth . . . who is responsible for the prevention or detection of crime and the enforcement of the penal, traffic or highway laws of the Commonwealth." Code § 18.2-57(G).

"Assault and battery are common law crimes." *Montague v. Commonwealth*, 278 Va. 532, 541 (2009). Assault may be established under either of two definitions. *Clark v. Commonwealth*, 279 Va. 636, 641 (2010). One definition involves proving that the defendant "engage[d] in an overt act intended to inflict bodily harm and ha[d] the present ability to inflict such harm." *Id.* (quoting *Carter v. Commonwealth*, 269 Va. 44, 47 (2005)). The other definition requires proof that the

- 8 -

defendant "engage[d] in an overt act intended to place the victim in fear or apprehension of bodily harm and create[d] such reasonable fear or apprehension in the victim." *Id.* (quoting *Carter*, 269 Va. at 47).

"To sustain a conviction for battery, the Commonwealth must prove a 'wil[l]ful or unlawful touching' of another." *Parish v. Commonwealth*, 56 Va. App. 324, 330 (2010) (alteration in original) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)). A willful act is "voluntary and intentional, but not necessarily malicious." *Willful*, *Black's Law Dictionary* (12th ed. 2024). "The law is clear that '[t]he slightest touching of another . . . if done in a rude, insolent, or angry manner, constitutes a battery for which the law affords redress.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 628 (2019) (alterations in original) (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 469 (2000)). And "[a]n intentional touching qualifies as a battery unless the actor has some legal justification or excuse." *Woodson v. Commonwealth*, 74 Va. App. 685, 694 (2022).

In the instant case, Deputy Nobles approached Davis wearing his badge of authority and said, "Hey, man, turn around for me." When Davis failed to comply, Nobles directed him to "turn around . . . right now" and reached for Davis's wrist. In response, Davis swatted Deputy Nobles's hand away and pushed him in the chest. The two men fell to the ground as Nobles continued his effort to place Davis in handcuffs. This evidence permitted the fact finder to conclude beyond a reasonable doubt that Davis committed an assault and battery on Deputy Nobles by touching him willfully in a "rude, insolent, or angry manner." *See Kelley*, 69 Va. App. at 628 (quoting *Adams*, 33 Va. App. at 469). And the record supports the conclusion that the touching was brief but clearly intentional.

The evidence further established that later, after Davis had been arrested and the officers were transporting him to the jail, Detective Garrant, who was also wearing his badge of authority, helped Deputy Hamilton execute a maneuver that permitted them to get the unwilling Davis back

into the patrol SUV. While being pulled into the car, Davis threatened to spit on Detective Garrant and then proceeded to spit in the detective's face twice. Considering all the circumstances, the fact finder could conclude beyond a reasonable doubt that Davis also unjustifiably assaulted and battered Detective Garrant by threatening to spit on him and following through on his threat.

This evidence was sufficient to support the two convictions for assault and battery of a law enforcement officer unless Davis proved a justification or excuse. *See Woodson*, 74 Va. App. at 694 (recognizing self-defense as a "[c]ommon justification[] for battery"). We address that issue next.

### 2. Claim of Justification for the Offenses

Davis argues that he was justified in defending himself, negating the battery of Deputy Nobles as a result. He contends that Nobles's act of reaching for his wrist was the "type of . . . highly intrusive seizure that exceed[ed] the bounds of an investigative stop" and constituted an arrest, which he contends was unlawful. In other words, Davis argues that Deputy Nobles did not have probable cause to support a lawful arrest. He reasons that Nobles lacked authority to arrest him for leaving the scene of an accident because that crime is a misdemeanor and it did not occur in the deputy's presence. Davis further suggests that Nobles had insufficient knowledge to provide probable cause to arrest him for driving under the influence. Davis therefore argues that he had the right to resist his unlawful arrest with reasonable force, providing a defense to his convictions for assault and battery of a law enforcement officer.

"An arrest occurs when an officer physically restrains a suspect or, in the absence of physical restraint, the suspect submits to the officer's assertion of authority and purpose to arrest." *Bristol v. Commonwealth*, 272 Va. 568, 573 (2006) (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). And an arrest requires probable cause, which is "a reasonable ground" to

believe that "the [particular] person to be . . . seized" is guilty of a crime. *Durham*, ___ Va. at ___

(quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

An investigative detention, by contrast, is "a brief, though not inconsequential, restriction on an individual's freedom of movement." *Commonwealth v. Hill*, 264 Va. 541, 547 (2002). Such a detention, often referred to as a *Terry* stop, is an "informal encounter[]." *See id.* at 547-48 (citing *Terry v. Ohio*, 392 U.S. 1, 24-26 (1968)). To conduct an investigative detention, an officer must have "reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity." *Turner v. Commonwealth*, 75 Va. App. 491, 501 (2022) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 202 (1997) (en banc)). "[T]he mere 'possibility of an innocent explanation' does not necessarily exclude a reasonable suspicion that the suspect might be violating the law." *Morris v. City of Va. Beach*, 58 Va. App. 173, 183 (2011) (quoting *Raab v. Commonwealth*, 50 Va. App. 577, 581 (2007) (en banc)).

This distinction between an arrest and an investigative detention is important to the law governing whether an individual may have a right to resist a particular encounter with police. At "common law, a citizen generally is permitted to use reasonable force to resist an illegal arrest." *Hill*, 264 Va. at 546; *see Banner v. Commonwealth*, 204 Va. 640, 646-47 (1963); *Brown v. Commonwealth*, 27 Va. App. 111, 116-17 (1998). Supporting this "common law right" is the theory that "the 'provocation' of an illegal arrest . . . operates to excuse an assault directed at thwarting [it]. An unlawful arrest was considered a great provocation at common law because of the dire consequences, including incarceration of extreme duration, which often resulted before an accused was . . . tri[ed] for the charged offense." *Hill*, 264 Va. at 547 (citations omitted).

At the same time, the law recognizes that "a detention [pursuant to *Terry*] is, by its nature, a *brief* intrusion on an individual's liberty." *Id.* at 548 (emphasis added). "[I]n conducting a *Terry* stop, the police must diligently pursue a means of investigation likely to confirm or dispel their

- 11 -

suspicion[ of a crime] quickly." *Turay v. Commonwealth*, 79 Va. App. 286, 302 (2023) (en banc) (quoting *Brown v. Commonwealth*, 33 Va. App. 296, 307 (2000)). As a result, "the provocation resulting from an illegal detention is far less significant than the provocation that attends an illegal arrest." *Hill*, 264 Va. at 548.[4] Accordingly, in Virginia, "a person . . . does not have the right to use force to resist an unlawful detention." *Id.* And in evaluating whether the seizure was an arrest or a *Terry* stop for purposes of assessing the suspect's right to resist, the Court views "the facts and circumstances . . . objectively *from the officer's perspective*." *Doscoli v. Commonwealth*, 66 Va. App. 419, 426 (2016).

In this case, Davis did not have a right to resist when Deputy Nobles approached him and asked him to turn around. The evidence, viewed under the proper standard, supports a finding that Deputy Nobles, at that time, was attempting only to detain him briefly under *Terry*.[5] "Brief, complete deprivations of a suspect's liberty" are permissible for purposes of an investigative detention, "'so long as the methods of restraint used are reasonable to the circumstances.'" *Johnson v. Commonwealth*, 20 Va. App. 49, 55 (1995) (quoting *Thomas v. Commonwealth*, 16 Va. App.

---

[4] The Supreme Court has emphasized that "recognition of a right to resist an unlawful detention would not advance the rationale supporting the common law right to use reasonable force to resist an unlawful arrest." *Hill*, 264 Va. at 548. Instead, it "would only serve to increase the danger of violence inherent in such detentions." *Id.*

[5] Although, as noted, a suspect is not permitted to resist even an unlawful detention, the evidence, viewed objectively, proved that the instant detention was lawful. Deputy Nobles had reasonable suspicion for the detention, and Davis concedes as much on brief. Nobles knew that a single-car accident had occurred at an intersection on Route 3. The driver had left the scene and was walking along Route 3—a road with a fifty-five mile-per-hour speed limit. Nobles saw Davis, who matched the description of the driver involved in the crash, walking in the middle of a lane of travel on Route 3 as a marked police cruiser followed him with its emergency lights activated. Consequently, Deputy Nobles had reasonable, articulable suspicion to believe that Davis had violated Code § 46.2-894, leaving the scene of an accident, and Code § 46.2-928, walking on a highway, permitting him to detain Davis to investigate. *See generally Hairston v. Commonwealth*, 67 Va. App. 552, 563 (2017) (noting that due to the standard of "objective . . . reasonableness, it is irrelevant whether the accused is prosecuted for, or even charged with, the offense that provided [reasonable suspicion or] probable cause for . . . [the] seizure in the first instance").

851, 857 (1993), *adopted upon reh'g en banc*, 18 Va. App. 454, 455 (1994)); *Parady v. Commonwealth*, 78 Va. App. 18, 32-33 (2023) (recognizing officer safety as a permissible consideration in deciding to use handcuffs during a *Terry* stop).  Here, Deputy Nobles was attempting to investigate a traffic accident believed to involve Davis.  He encountered Davis, who left the scene of that accident and had already refused to engage voluntarily with another officer, walking within one of the lanes of travel on a highway with a speed limit of fifty-five miles per hour.  This evidence supports a finding that Nobles acted reasonably in attempting to handcuff Davis for both his own safety and Davis's while conducting an investigation.  Neither handcuffing a suspect nor placing him in the back of a police car "automatically transform[s] an encounter into an arrest."  *Parady*, 78 Va. App. at 33.  As a result, because Deputy Nobles's initial actions established only an attempt to detain the suspect, Davis did not have the right to use force to resist the officer when Davis knocked his hand away and pushed him.[6]

Further, once Davis was lawfully arrested for assaulting and battering Deputy Nobles, he had no legal justification for resisting that arrest when later, during transport to the jail, he spit on Detective Garrant.  So the evidence supports Davis's convictions for the two counts of assault and battery of a law enforcement officer, and the trial court did not err by denying his motion to strike those charges.

### B.  Obstruction of Justice

Obstruction of justice requires that a defendant, "without just cause," either "knowingly obstructs . . . any law-enforcement officer . . . in the performance of his duties" or "fails or refuses

---

[6] Because we hold the evidence supports a finding that Davis was merely detained, we need not consider the Commonwealth's alternative argument that the officers had probable cause to arrest Davis when Deputy Nobles first approached him.  *See generally Thomas v. Commonwealth*, 303 Va. 188, 198 (2024) (holding that appellate courts decide cases on "the best and narrowest grounds available" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010))).

. . . to cease such obstruction when requested to do so by such . . . law enforcement officer." Code § 18.2-460(A). To violate Code § 18.2-460(A), the accused must engage in "acts clearly indicating an intention . . . to prevent the officer from performing his duty, as to 'obstruct' ordinarily implies opposition or resistance by direct action . . . . It means to obstruct the officer himself[,] not merely to oppose or impede the process with which the officer is armed." *Maldonado v. Commonwealth*, 70 Va. App. 554, 563 (2019) (second alteration in original) (quoting *Jordan v. Commonwealth*, 273 Va. 639, 648 (2007)).

Obstruction may be proved using acts that are "either active or passive." *Id.* (quoting *Thorne v. Commonwealth*, 66 Va. App. 248, 255 (2016)). Passive obstruction occurs "where the officer seeks to make the defendant act directly and the defendant refuses or fails to act as required." *Thorne*, 66 Va. App. at 255 (quoting *DiPino v. Davis*, 729 A.2d 354, 361-62 (Md. 1999)). Passive obstruction can become active if the officer is forced to escalate his efforts to "act[] directly against the defendant . . . and is physically resisted." *Id.* (quoting *DiPino*, 729 A.2d at 361). "As long as the obstructive behavior 'clearly indicat[es] an intention on the part of the accused to prevent the officer from performing his duty,' the evidence proves the offense." *Id.* at 256 (alteration in original) (quoting *Jordan*, 273 Va. at 648). This is so because it is the "intent to impede a police officer in the performance of his duties that is the gravamen of [Code § 18.2-460(A)]." *Woodson v. Commonwealth*, 14 Va. App. 787, 795 (1992), *aff'd*, 245 Va. 401 (1993).

Davis argues that he was not guilty of obstruction of justice because he did not prevent the officers from performing their duty. He contends, instead, that he was simply seeking medical treatment before being taken to jail. The evidence belies this contention.

While Deputy Hamilton was transporting Davis to the jail, Davis's combative behavior in the back seat suddenly ceased. Concerned for Davis's safety due to his earlier exposure to pepper

spray, Deputy Hamilton pulled over to check on him. As soon as he did so, Davis resumed his combative behavior, showing he was plainly capable of remaining calm despite any residual discomfort. *See id.* (recognizing that a person's statements and conduct are relevant to prove his intent). After removing Davis from the patrol vehicle, Hamilton and the other officers adjusted his handcuffs and attempted to further decontaminate his face at his request. After several minutes, they asked Davis to get back into the patrol SUV so they could get him to the jail. They explained that the jail was nearby and additional decontamination efforts would be more productive there. At that point, Davis's complaints shifted to focus primarily on alleged discomfort due to the handcuffs, not his claimed need for additional decontamination. He gave "[his] word" that he would not "do [any]thing" if they loosened the handcuffs further, and he continued to rebuff their requests to get back into the vehicle. The officers then executed a push-pull maneuver to place him back inside. Even afterward, Davis physically resisted putting his feet in the car and threatened to spit on Detective Garrant.

The record makes clear that Davis did not passively ignore the officers' orders to return to the patrol car. Instead, Davis's behavior caused Deputy Hamilton and Detective Garrant to execute the special physical maneuver to get him back inside. After doing so, they had to take additional efforts to get his feet in the car because Davis continued to be combative. Davis's demonstrated ability to remain calm at certain times, coupled with his ongoing resistance and changing rationale for it, illustrated his intention to prevent the officers from performing their duty of transporting him to the jail.

Considering the totality of the evidence, the fact finder could conclude beyond a reasonable doubt that Davis attempted to impede the officers while they were lawfully engaged in their duties and that he was guilty of obstruction of justice under Code § 18.2-460(A).

CONCLUSION

The appeal in Record No. 1899-23-2 is dismissed.[7]  With regard to the appeal in Record

No. 0062-24-2, we hold that Davis waived his right to challenge his conviction for destruction of

property.  Further, the evidence was sufficient to support his convictions for assault and battery of

a law enforcement officer and obstruction of justice.  As a result, the trial court's judgment in

Record No. 0062-24-2 is affirmed.

*Dismissed as to Record No. 1899-23-2.*
*Affirmed as to Record No. 0062-24-2.*

---

[7] The trial court originally sentenced Davis by final order of October 23, 2023.  Davis noted a timely appeal, which was assigned Record No. 1899-23-2.  On November 2, 2023, the trial court suspended that order.  The court then granted Davis's motion to vacate it and held a new sentencing hearing at which it considered a revised presentence report and sentencing guidelines.  On December 18, 2023, the trial court entered a new sentencing order.  Davis then filed a new notice of appeal, which was assigned Record No. 0062-24-2.  By order of May 6, 2024, this Court granted Davis's motion to consolidate the two appeals for briefing and argument.  We now dismiss the appeal in Record No. 1899-23-2 because, as Davis acknowledged in his motion to consolidate, the order on which that appeal is based was vacated at his request.  *Cf. generally Logan v. City Council*, 275 Va. 483, 500 (2008) (vacating part of the circuit court's judgment and, as a result, "dismiss[ing] the portion of [the] appeal addressing that part of the . . . judgment").