COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Alston and Decker
Argued at Richmond, Virginia

UNPUBLISHED

DAVID MILLER FRIZZELL

MEMORANDUM OPINION* BY
v.      Record No. 0028-17-3        JUDGE ROSSIE D. ALSTON, JR.
                                    JULY 24, 2018

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
James J. Reynolds, Judge

David B. Hargett (Hargett Law, PLC, on brief), for appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

David Miller Frizzell ("appellant") appeals his convictions for attempted capital murder

and use of a firearm in the commission of a felony. Appellant contends that (1) the Circuit Court

of Pittsylvania County ("trial court") erred when it denied appellant's motion to suppress; (2) the

trial court erred in excluding expert testimony about appellant's ability to premeditate; and

(3) the trial court erred in declining to give three jury instructions proffered by appellant. For the

reasons stated below, we affirm the trial court's rulings.

BACKGROUND

On October 30, 2015, Deputy Sheriff Jason Woods ("Woods") was on patrol and

received a report regarding suspected property damage and reckless driving by an individual

driving a white sport utility vehicle ("SUV") at a nearby park. The eyewitnesses who had

reported the incident told Woods that they saw the SUV, driven by an older, white male with

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

some facial hair, doing "doughnuts"[1] on the grass of the park, causing dirt and grass to spew everywhere. Based upon this description, Woods realized he was already familiar with the SUV and its owner, appellant, from an interaction a year earlier. Woods searched for the SUV and observed it parked at a trailer park, with appellant standing beside it. Woods drove farther down the road and called for backup, but when he returned to the trailer park a few minutes later, the SUV was gone.

Woods drove to the park to inspect the damage and observed that the grass area in the park was "tore up pretty bad, as far as ruts and tire tracks." Woods estimated that the property damage exceeded $1,000 and intended to seek an arrest warrant for appellant for felony destruction of property. As Woods drove back to his station to speak with a magistrate, he again observed the SUV, which he began following. Woods observed a female in the driver's seat, another male in the passenger seat, and appellant in the back seat. Woods had followed the SUV for a short time when the SUV began to pull to the side of the road. Woods activated his emergency lights as he came to a stop behind the SUV.

Steven Holland, the other male passenger in the vehicle, said that when Woods stopped behind the SUV, appellant "got fidgety and started to get out." Appellant exited the SUV and, ignoring Woods' directives to get back inside, walked around to the driver's side of the vehicle. Appellant attempted to pull the female driver, Juanita Haley ("Haley"), appellant's girlfriend, out of the SUV. Haley ran toward Woods and said, "I don't know what's wrong with him, he's drunk." Haley testified that appellant had recently become severely depressed and that he

---

[1] A "doughnut" is a maneuver in which a driver causes his vehicle to spin in a continuous 360-degree motion. "Performing this maneuver entails rotating the rear or front of the vehicle around the opposite set of wheels in a continuous motion, creating (ideally) a circular skid-mark pattern of rubber on a roadway and possibly even causing the tires to emit smoke from [the] friction." See Doughnut (driving), https://en.wikipedia.org/wiki/Doughnut_(driving) (last visited June 27, 2018). It is commonly performed by NASCAR drivers following a victory.

consumed heavy amounts of alcohol on a daily basis. Haley further stated that on the date of the incident, appellant had consumed an entire bottle of Jim Beam whiskey and had also smoked marijuana.

Woods ordered appellant to step away from the SUV. Appellant turned to look at Woods and started walking toward him. Woods noticed that appellant had bloodshot eyes and a "blank look on his face." Woods drew his taser and pointed it at appellant, ordering him to stop walking. Appellant did not comply, and after several more commands, when appellant was about six feet away from Woods, Woods tased him. Appellant "tensed up" and started backing up toward the SUV, but then put his hand into his left pocket while stating, "Jason, you've done fucked up now." Woods dropped his taser and drew his gun, ordering appellant to remove his hand approximately five times. Appellant quickly pulled a gun from his pocket and fired it at Woods. Woods fired four shots in response. Appellant was struck once in the leg but did not appear to notice.

Other officers arrived at the scene and approached appellant, observing that he had "a thousand-yard stare" before tasing him again and ultimately placing him under arrest. After being handcuffed, appellant remarked, "[c]an you please take the damn probes out of my back." Woods testified that he informed an officer at the scene that he thought appellant had shot him and that appellant, overhearing, then stated "[o]h, you're not hit, you're fine."

Appellant was transported to the hospital for treatment for his leg wound. While at the hospital, Special Agent Matthew Wade ("Wade") of the Virginia State Police interviewed appellant. Wade testified that as they left the hospital and appellant was placed in a vehicle for transport to the jail, appellant "dropped his head and said, 'I'll never see the light of day again.'"

At the conclusion of the Commonwealth's evidence, appellant made a motion to strike, arguing that the evidence did not establish that he could have acted with premeditation or

deliberation due to his intoxicated state. The Commonwealth responded that appellant had demonstrated the capability to premeditate both through his awareness that the SUV had stopped, which became evident when he removed Haley from the car, and through his statements during the course of the encounter showing that he knew what was happening and who was involved.

The trial court denied the motion to strike, reasoning that "the evidence, if believed, could support a verdict of attempted capital murder . . . [because] premeditation need not exist for any particular length of time."

In his case-in-chief, appellant called Dr. Frank Russell ("Russell") as an expert witness in clinical psychology, to offer an opinion on the effect of alcohol and marijuana on appellant's ability to premeditate. Russell admitted that he had never testified about that particular subject, but stated that he is a mental health expert and often performs competency evaluations on criminal defendants. The trial court allowed Russell to testify that alcohol and marijuana can potentially affect a person's ability to premeditate. However, Russell had partially based his testimony on out-of-court statements by appellant. The trial court asked Russell if he could "exorcise [sic]" appellant's statements from his opinion, inquiring "[i]n other words, is it possible for you to formulate an opinion without relying on the information provided by [appellant]?" Russell stated, "[n]ot wholly." Based on Russell's response, the trial court precluded Russell from opining on appellant's specific mental state.

After appellant rested his case and during the jury instructions phase of the trial, the trial court granted several standard instructions addressing the presumption of innocence, the reasonable doubt standard, and charging that appellant had no burden to produce any evidence.

The parties disagreed on three instructions that are now at issue in this appeal: Instruction 21, the voluntary intoxication instruction, Instruction 14, the premeditation instruction, and an imperfect self-defense instruction.

Instruction 21 stated, in pertinent part:

> If you find that the defendant was so greatly intoxicated by the voluntary use of alcohol that he was incapable of deliberating or premeditating, then you cannot find him guilty of any offense greater than attempted second degree murder.

Appellant proffered an alternative ("Refused Instruction A") which read:

> If, at the time of the attempted homicide, [appellant's] state of mind was caused by voluntary intoxication *or other factors*, and was such that a reasonable doubt exists as to his having acted deliberately and with premeditation, you cannot find him guilty of any offense greater than second degree murder.

(Emphasis added).

Instruction 14, the premeditation instruction, read:

> "Willful, deliberate and premeditated" means a specific intent to kill, adopted at some time before the killing, but which need not exist for any particular length of time.

Appellant's proffered alternative instruction ("Refused Instruction B") added this language as a second paragraph:

> For the attempt to kill to be willfull [sic], deliberate, and premeditated, it is necessary that it should have been done on purpose, and not by accident, or without design; that [appellant] must have reflected with a view to determine whether he would kill or not; and that he must have determined to kill as a result of that reflection before he does the act-that is to say, the attempt to kill must be a premeditated attempt to kill on consideration.

Finally, appellant's proffered imperfect self-defense instruction ("Refused Instruction E") provided, in relevant part:

> (3)  That [appellant] was the initial aggressor in the conflict but *began the conflict without malice*; and
> (4)  That [it] appeared to [appellant] that it was *necessary to attempt to kill Jason Woods in order to save himself* from death or great bodily harm; and
> (5)  That [appellant's] *belief was reasonable in that the circumstances as they then appeared to him were sufficient to*

- 5 -

*create a belief* of death or great bodily harm in the mind of a reasonable person.

(Emphasis added).

The trial court denied each of appellant's proposed instructions, concluding that the principles stated therein were in some instances an incorrect statement of the law and in other instances were encompassed by Commonwealth's Instructions 21 and 14. The jury found appellant guilty of attempted capital murder and use of a firearm while in the commission of a felony. This appeal followed.

ANALYSIS

I. *The trial court did not err in denying appellant's motion to suppress.*

"Upon review of the [trial] court's denial of a suppression motion, 'the burden is upon [appellant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" Hill v. Commonwealth, 68 Va. App. 610, 616-17, 812 S.E.2d 452, 455 (2018) (quoting Andrews v. Commonwealth, 37 Va. App. 479, 488, 559 S.E.2d 401, 406 (2002)). This is not to be confused with the principle that the government bears the burden of proof at trial that the evidence should not be suppressed. United States v. McGee, 736 F.3d 263, 269 (4th Cir. 2013); United States v. Kehoe, No. 17-4536, 2018 U.S. App. LEXIS 16624, at *8 (4th Cir. June 20, 2018).

"A claim by a defendant that he was seized within the contemplation of the Fourth Amendment 'presents a mixed question of law and fact that is reviewed *de novo* on appeal.'" Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002) (quoting McCain v. Commonwealth, 261 Va. 483, 489, 545 S.E.2d 541, 545 (2001)). "Whether a seizure has occurred for Fourth Amendment purposes depends upon whether, under the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave." McGee v. Commonwealth, 25 Va. App. 193, 199-200, 487 S.E.2d 259, 262 (1997) (*en banc*)

(citing United States v. Mendenhall, 446 U.S. 544, 554 (1980)).  "In considering a claim of seizure, '[this Court] is required to give deference to the factual findings of the trial court and to determine independently whether, under the law, the manner in which the evidence was obtained satisfies constitutional requirements.'"  Bolden, 263 Va. at 470, 561 S.E.2d at 704 (quoting McCain, 261 Va. at 490, 545 S.E.2d at 545).

Appellant contends that the trial court erred in denying his motion to suppress, asserting that because Woods lacked reasonable, articulable suspicion to initiate a traffic stop, all the evidence obtained thereafter—appellant's statements, the firearm, and the deputies' other observations—was inadmissible.  We disagree.

This Court need not engage in an extensive analysis of whether the encounter constituted a lawful traffic "stop"[2] because the interaction between Woods and the SUV's occupants began consensually, and appellant was not actually "seized" until well after he had committed serious criminal acts.  "The determination whether an encounter is consensual or is an illegal seizure in violation of a defendant's Fourth Amendment rights is not governed by a 'litmus test,' and requires consideration of all the circumstances surrounding the encounter."  Jones v. Commonwealth, 279 Va. 521, 528, 690 S.E.2d 95, 99 (2010) (citations omitted).  "Law enforcement officers may approach a citizen in public places and engage in consensual encounters involving questioning of the citizen, if the citizen is willing to listen, without violating the Fourth Amendment's prohibition of unreasonable seizures."  Id. (citing United States v. Drayton, 536 U.S. 194, 200 (2002)).  "[T]his Court must consider what appellant 'actually did in response to the police officer's show of authority' and *when* appellant actually

---

[2] "[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited."  Delaware v. Prouse, 448 U.S. 648, 653 (1979) (citations omitted).  Appellant characterized the encounter as a "stop" throughout his brief, but the Court does not agree for the reasons set forth in our analysis.

*submitted* to [the officer's] show of authority in order to determine when appellant was seized for Fourth Amendment purposes." Beasley v. Commonwealth, 60 Va. App. 381, 392, 728 S.E.2d 499, 504 (2012) (quoting Woodson v. Commonwealth, 245 Va. 401, 405, 429 S.E.2d 27, 29 (1993)) (emphasis in original).

Whether this incident is couched as a consensual encounter or as a traffic stop does nothing to assist appellant from a Fourth Amendment perspective. Once Woods pulled behind the SUV, Haley, who was driving, voluntarily pulled to the side of the road *before* Woods had activated his lights. At that point, appellant exited the vehicle and attempted to forcibly remove Haley from the vehicle so that he could get into the driver's seat and presumably drive away. After Woods ordered appellant to stop these actions, appellant walked towards Woods and continued to advance despite several directives from Woods, ultimately requiring Woods to use his taser. After being tased, appellant put his hand in his pocket and said, "Jason, you've done fucked up now" before pulling out a gun and firing multiple shots at Woods.

Neither Haley nor appellant ever submitted to Woods' authority to the extent required under the Fourth Amendment. The entire encounter began consensually when Haley, the driver of the vehicle, pulled over the SUV voluntarily, and the situation was immediately and exponentially escalated through appellant's subsequent actions. Though Woods had activated the lights on his cruiser after Haley pulled over, no seizure had yet occurred. See Jones, 279 Va. at 528, 690 S.E.2d at 99 (stating that "a consideration of all the circumstances surrounding the encounter" should be implemented). This is not a case in which an individual simply submitted to an officer's authority by pulling over *in response* to lights or sirens, or exited a vehicle following a directive from that officer. Instead, appellant got out of the SUV before Woods had even exited his cruiser, appellant physically accosted Haley, and appellant then became involved in the firefight with Woods. Appellant was only eventually seized when other officers arrived at

the scene of the incident, tased him again, and placed him under arrest. See Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 4 (1983) ("The consensual encounter becomes a seizure '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'"). Appellant's liberty had not been restrained at the time of his criminal acts, thus the Fourth Amendment was not implicated because he had not been seized. See Bolden, 263 Va. at 470, 561 S.E.2d at 704.[3]

Additionally, we recognize that "[a]n officer may effect a seizure by arrest . . . when he has probable cause to believe that the person seized has committed or is committing a criminal offense." Baldwin v. Commonwealth, 243 Va. 191, 195, 413 S.E.2d 645, 647 (1992) (citing Dunaway v. New York, 442 U.S. 200, 207-09 (1979)). Here, Woods spoke to multiple witnesses who told him that they saw a white SUV, driven by an individual matching appellant's description, doing "doughnuts" and tearing up the grass in the park. Woods was already familiar with appellant and the SUV from an interaction a year earlier. Shortly after speaking with the witnesses, Woods observed the SUV and saw appellant standing next to it. By that point, as the trial court so found, Woods had sufficient reason to believe that appellant's SUV was the same vehicle that caused the property damage because it was in the area shortly after the incident was reported. Moreover, Woods also personally observed the property damage, and the trial court correctly concluded that "officers [have an] ability to make a gut determination that the damage in question is in excess of $1000."

---

[3] Additionally, "if a person engages in new and distinct criminal acts during an allegedly unlawful police encounter, 'the exclusionary rule does not apply, and evidence of the events constituting the new criminal activity, including testimony describing the defendant's own actions, is admissible.'" Testa v. Commonwealth, 55 Va. App. 275, 283, 685 S.E.2d 213, 216-17 (2009) (quoting Brown v. City of Danville, 44 Va. App. 586, 600, 606 S.E.2d 523, 530 (2004)). Serious criminal acts were committed by appellant after Woods began interacting with him. Thus, even if the Fourth Amendment had been implicated during the encounter, the exclusionary rule would not apply.

Accordingly, the Court finds that the trial court did not err in denying appellant's motion to suppress.

II. *The trial court did not err in excluding certain testimony from appellant's expert witness.*

"Generally, we review a trial court's decision to admit or exclude evidence using an abuse of discretion standard." Avent v. Commonwealth, 279 Va. 175, 197, 688 S.E.2d 244, 256 (2010) (quoting John Crane, Inc. v. Jones, 274 Va. 581, 590, 650 S.E.2d 851, 855 (2007)). "This standard, if nothing else, means that the trial [court's] 'ruling will not be reversed simply because an appellate court disagrees.'" Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005) (quoting Henry J. Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 754 (1982)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Id.

"Generally, an out-of-court statement by a criminal defendant, if relevant, is admissible as an exception to the hearsay rule *when offered by the prosecution* because it constitutes an admission of a party." King v. Commonwealth, 18 Va. App. 57, 59, 441 S.E.2d 704, 705 (1994) (emphasis added) (citing Alatishe v. Commonwealth, 12 Va. App. 376, 378, 404 S.E.2d 81, 82 (1991)). "[W]hen proffered by the party who made the statement, such a statement is generally not admissible." Id. (citing Tyree v. Lariew, 208 Va. 382, 385, 158 S.E.2d 140, 143 (1967)).

Here, the out-of-court statements by appellant were not offered by the prosecution but rather by appellant himself. Appellant endeavored to elicit an expert opinion from Russell regarding appellant's mental state at the time of the encounter. When the issue arose, the trial court asked Russell if he could render an opinion without appellant's statements. The trial court specifically inquired, "[i]n other words, is it possible for you to formulate an opinion without relying on the information provided by [appellant]?" Russell then candidly responded, "[n]ot wholly." Because appellant's expert witness admitted to the trial court that he could not render

- 10 -

an opinion without relying, at least in some part, upon out-of-court hearsay statements from appellant, Russell's opinion on *appellant's* specific mental state was rendered inadmissible.

Thus, the trial court did not abuse its discretion in excluding Russell's opinion regarding appellant.

III. *The trial court did not err in rejecting appellant's proposed jury instructions.*

"A trial court's decision whether to grant or refuse a proposed jury instruction is generally subject to appellate review for abuse of discretion." Howsare v. Commonwealth, 293 Va. 439, 443, 799 S.E.2d 512, 514-15 (2017). "In deciding whether an instruction was appropriate, the appellate court views the facts in the light most favorable to the instruction's proponent." Id. (citing Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009)). "Only when reasonable jurists could not differ can [this Court] say an abuse of discretion has occurred." Thomas, 44 Va. App. at 753, 607 S.E.2d at 743.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "Instructions to juries . . . should be succinct and clear—leaving nothing unsaid which needs to be said, while saying no more than necessary." Kennemore v. Commonwealth, 50 Va. App. 703, 712, 653 S.E.2d 606, 610 (2007). "An instruction accurately stating the law is nonetheless improperly given if it is 'inapplicable to the facts and circumstances of the case.'" Juniper v. Commonwealth, 271 Va. 362, 418, 626 S.E.2d 383, 419 (2006) (quoting Hatcher v. Commonwealth, 218 Va. 811, 813-14, 241 S.E.2d 756, 758 (1978)).

A. *Instruction 21*

First, appellant challenges Instruction 21, the voluntary intoxication instruction, which

stated, in pertinent part:

> If you find that the defendant was so greatly intoxicated by the
> voluntary use of alcohol that he was incapable of deliberating or
> premeditating, then you cannot find him guilty of any offense
> greater than attempted second degree murder.

Appellant's Refused Instruction A read:

> If, at the time of the attempted homicide, [appellant's] state of
> mind was caused by voluntary intoxication *or other factors*, and
> was such that a reasonable doubt exists as to his having acted
> deliberately and with premeditation, you cannot find him guilty of
> any offense greater than second degree murder.

(Emphasis added).

On brief, appellant primarily argues that Instruction 21 shifted the burden of proof from

the Commonwealth to him. "[T]he Due Process Clause requires the prosecution to 'prove

beyond a reasonable doubt every fact necessary to constitute the crime charged.'" Hodge v.

Commonwealth, 217 Va. 338, 341, 228 S.E.2d 692, 695 (1976) (quoting Mullaney v. Wilbur,

421 U.S. 684, 685 (1975), and citing In re Winship, 397 U.S. 358 (1970)). "The burden of proof

is always upon the Commonwealth, and *this burden never shifts*." Id. at 342, 228 S.E.2d at 695

(emphasis in original).

When this Court conducts a "review of the propriety of a particular instruction, [the

Court] look[s] to the instructions as a whole." Graves v. Commonwealth, 65 Va. App. 702, 707,

780 S.E.2d 904, 906 (2016) (citations omitted). Here, Instruction 1 offered by the

- 12 -

Commonwealth addressed the presumption of innocence, the reasonable doubt standard, and explicitly provided that "[t]here is no burden on [appellant] to produce any evidence."[4] Moreover, contrary to appellant's suggestion, Instruction 21 does not contain the burden-shifting criteria of which appellant complains. In this regard it is noted that other model jury instructions in Virginia that actually contain burden-shifting language are not comparable to Instruction 21. For example, Instruction No. 53.100 provides that "*the defendant must prove* by the greater weight of the evidence that he was insane when the crime was committed." (Emphasis added).

Next, we note that Refused Instruction A was improper because of the added language "or other factors." The Commonwealth is correct that there is no authority supporting the argument that the phrase "or other factors," as it modifies or augments a voluntary intoxication instruction, has any basis in law. Trial courts have a continuing duty to avoid creating confusion when instructing a jury, with the ultimate goal of fostering an organic and efficient trajectory of discussion within the deliberation proceedings. See Dowdy v. Commonwealth, 220 Va. 114, 116, 255 S.E.2d 506, 508 (1979) ("[A] correct statement of the law applicable to the case, when the law is stated . . . [is one of the] essentials of a fair trial[.]" (quoting Limbaugh v.

---

[4] In totality, Instruction 1 provides:

> [Appellant] is presumed to be innocent. You should not assume [appellant] is guilty because he has been indicted and is on trial. This presumption of innocence remains with [appellant] throughout the trial and is enough to require you to find [appellant] not guilty unless and until the Commonwealth proves each and every element of the offense beyond a reasonable doubt. This does not require proof beyond all possible doubt, nor is the Commonwealth required to disprove every conceivable circumstance of innocence. However, suspicion or probability of guilt is not enough for a conviction.
>
> There is no burden on [appellant] to produce any evidence.
>
> A reasonable doubt is a doubt based on your sound judgment after a full and impartial consideration of all the evidence in the case.

Commonwealth, 149 Va. 383, 400, 140 S.E. 133, 138 (1927))). A muddled legal definition of voluntary intoxication would have run afoul of that interest.

Appellant alternatively contends that the trial court should have simply struck "or other factors" from the instruction, because "when [a] principle of law is vital[,]" a trial court has an affirmative duty to properly instruct a jury. Bryant v. Commonwealth, 216 Va. 390, 393, 219 S.E.2d 669, 671 (1975). This additional assertion by appellant is nullified because without the "or other causes" phrase, the only remaining material difference in appellant's proffered instruction was that it also incorporated the reasonable doubt standard, which the trial court had already addressed in Instruction 1. See Graves, 65 Va. App. at 707, 780 S.E.2d at 906.

For those reasons, the trial court did not err in granting Instruction 21 and denying Refused Instruction A.

### B. *Instruction 14*

Next, appellant asserts that the trial court erred in granting Instruction 14, the premeditation instruction, which read:

> "Willful, deliberate and premeditated" means a specific intent to kill, adopted at some time before the killing, but which need not exist for any particular length of time.

Appellant's Refused Instruction B added a second paragraph, which stated:

> For the attempt to kill to be willfull [sic], deliberate, and premeditated, it is necessary that it should have been done on purpose, and not by accident, or without design; that [appellant] must have reflected with a view to determine whether he would kill or not; and that he must have determined to kill as a result of that reflection before he does the act-that is to say, the attempt to kill must be a premeditated attempt to kill on consideration.

Again, we find no error. Although Refused Instruction B contained a correct statement of law, see Pannil v. Commonwealth, 185 Va. 244, 255, 38 S.E.2d 457, 463 (1947), our inquiry into the propriety of the trial court's actions does not end there.

"The trial court's 'broad discretion in giving or denying instructions requested' is reviewed for an abuse of discretion." Witherow v. Commonwealth, 65 Va. App. 557, 565, 779 S.E.2d 223, 227 (2015) (quoting Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (*en banc*)). The trial court granted Instruction 14 which contained a far more concise, refined, and succinct definition of premeditation. The Court cannot conclude that the trial court abused its discretion when it granted an instruction that included a correct statement of law. Appellant even conceded that the substance of Refused Instruction B was subsumed within Instruction 14.

Moreover, Refused Instruction B was likely to cause confusion with the jury due to the multiple factual qualifications that it required for a finding of premeditation. "Even if we assume that the trial court's sole basis for refusing to give the proposed instruction was that it was not a 'model instruction,' that does not constitute reversible error." Vay v. Commonwealth, 67 Va. App. 236, 255 n.3, 795 S.E.2d 495, 504 n.3 (2017).

Thus, the trial court did not err in rejecting Refused Instruction B.

### C. *Imperfect Self-Defense*

Finally, appellant asserts that the trial court erred in refusing to give Refused Instruction E. Appellant contends that he had a reasonable belief that force was necessary to defend himself from Woods. We disagree and find no error.

"A defendant is entitled to have the jury instructed only on those theories of the case that are supported by the evidence." Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986) (citations omitted). "The evidence to support an instruction 'must be more than a scintilla.'" Id.

As a matter of Virginia law, imperfect self-defense is not available to negate the element of malice. See Jackson v. Commonwealth, 98 Va. 845, 848, 36 S.E. 487, 488 (1900). However,

we note that appellant did not seek Refused Instruction E for that reason. Refused Instruction E stated that appellant must have "began the conflict without malice" for it to apply.

Nevertheless, appellant did not point to any supporting facts that entitled him to an imperfect self-defense instruction. The evidence established that Woods repeatedly attempted using peaceful means to restrain appellant, and only resorted to using force when appellant became hostile. Woods testified that he used his taser because he feared appellant may attack Haley or him, as appellant was non-compliant during the entire encounter and continuously escalated the tension. At trial, appellant did not testify, precluding the jury from hearing directly from him about any suggestion of fear that he had, and appellant did not identify any pertinent testimony from the other witnesses supporting Refused Instruction E. Thus, there was not more than a scintilla of evidence necessary to support the theory that appellant's actions constituted imperfect self-defense.

Accordingly, appellant fell far short of the standard required for a jury instruction, and the trial court did not err in denying Refused Instruction E.

CONCLUSION

The trial court did not err in denying appellant's motion to suppress, as no evidence supported his assertion that his Fourth Amendment rights were violated. Nor did the trial court err in precluding appellant's expert witness from testifying about appellant's specific mental state, because the proffered testimony was based upon hearsay statements. Finally, the trial court did not err in rejecting appellant's proposed jury instructions for the various reasons stated above.

Affirmed.