PRESENT: Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Kelsey, JJ., and Russell, S.J.

MARK THOMAS HOWSARE

v.  Record No. 160414

COMMONWEALTH OF VIRGINIA

OPINION BY
SENIOR JUSTICE CHARLES S. RUSSELL
June 1, 2017

FROM THE COURT OF APPEALS OF VIRGINIA

This appeal presents the question whether, in a homicide case, the jury was improperly instructed on the issue of intent.

FACTS AND PROCEEDINGS

In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial.  *Scott v. Commonwealth*, 292 Va. 380, 381, 789 S.E.2d 608, 608 (2016) (citing *Baldwin v. Commonwealth*, 274 Va. 276, 278, 645 S.E.2d 433, 433 (2007)).

Mark Thomas Howsare lived alone in his house in Stafford County.  His nephew, William Conner, Jr., lived nearby and had a good relationship with him.  Conner frequently helped Howsare around the house and ran errands for him.  On the evening of January 19, 2014, Howsare asked Conner to return an air mattress to a store from which it had been purchased.  Connor agreed to go and, with his girlfriend, Cheyanne Henry, took the mattress to the store.  They were unsuccessful in returning it because the store refused to accept it from them, insisting on Howsare's personal presence to make the exchange.  Conner and Henry began driving back to Howsare's house and called him, telling him of the problem and that they were coming to pick him up.  Howsare responded, "Like hell you are" and hung up.  Conner called him back and Howsare made it clear he did not want to go.  An argument ensued in which Howsare told Conner that he "was going to hurt" him.  Neither Connor nor Henry took the threat seriously.

They continued to the house, parked Conner's truck and walked up onto the front porch. Finding the door locked, Conner knocked and called on Howsare to come out. Howsare had been drinking. He refused to come out and an argument ensued through the closed door, in which Howsare told Conner that he had a gun, that it was loaded and that he was going to shoot Conner. Conner told Henry to return to the truck, which she did. Conner continued pounding on the door. Henry, from the truck, heard the door open followed by three to five gunshots and a sound of breaking glass.

Henry looked back at the door and saw Howsare standing there with a gun in his hand. She saw Conner stagger off the front porch and fall on the ground. She called to Conner but he made no reply. She ran down the driveway and called 911 on her cell phone. When the police arrived, they determined that Conner was dead. He was lying on his back about 25 feet from the house, with gunshot wounds in his shoulder and abdomen. An autopsy later revealed that the shoulder wound had been the cause of death, having passed laterally through the lungs and heart. The police investigation also indicated that the front door had been open when the shots were fired, but they had passed through an outer storm door, shattering the glass.

Before entering the house, the police tried unsuccessfully to communicate with Howsare by telephone and by a public-address system. They then broke in through a side window and saw him directly ahead of them, sitting in a bathroom and pointing a gun at them. They shouted at him to drop the gun and step outside. He complied.

When later interviewed by a detective at the sheriff's office, Howsare stated that he told Conner over the phone to "[c]all it a day," to "[c]all it good" and to just leave him alone. With regard to the shooting, he said that he had "pulled the trigger on a .357 four or five times" but that "there was no intent to maim, to hurt, just go away." He said that he "just wanted to go to

2

bed" but that Conner "just kept pounding on the door" and that Howsare "just kind of snapped." He said that he had "shot high" as he fired. The detective testified that when told that Conner was dead, Howsare "acted shocked."

Howsare was indicted by a Stafford County grand jury for first-degree murder, aggravated malicious wounding, and use of a firearm during the commission of a felony. Tried by a jury, he was convicted of second-degree murder, aggravated malicious wounding, and use of a firearm during the commission of a felony. At the conclusion of the trial, in accordance with the jury verdict, the court entered judgment imposing a total sentence of 28 years' incarceration.

At trial, the Commonwealth offered a proposed jury instruction that read: "Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances of a particular case. The state of mind of the defendant may be shown by his acts and conduct." Defense counsel objected on the grounds that it was not a model jury instruction and was an incomplete statement of the law because it failed to mention inferences that could be drawn from the defendant's statements. Overruling the objection to the instruction, the court granted it as Instruction 7. Without objection, the court also granted Instruction 20, which read: "The statements presented to you as having been made by the defendant are submitted for your consideration along with all the other evidence. The weight, value, credibility and reliability of those statements are questions for your determination." Also, over Howsare's objection but not assigned as error on appeal, the court granted Instruction 6, which reads "You may infer that every person intends the natural and probable consequences of his acts."

Howsare's appeal to the Court of Appeals was unsuccessful. *Howsare v. Commonwealth*, Record No. 0106-15-4, slip op. at 1 (Sept. 21, 2015) (unpublished). He petitioned this Court for an appeal, asserting eight assignments of error. We awarded him an

appeal limited to his first two assignments of error, both of which challenge Instruction 7, quoted above.

ANALYSIS

A trial court's decision whether to grant or refuse a proposed jury instruction is generally subject to appellate review for abuse of discretion. *Cooper v. Commonwealth*, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009). The reviewing court's sole responsibility is to ensure that the law has been clearly stated in the instructions and that they cover all the issues that the evidence fairly raises. *Swisher v. Swisher*, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982). In deciding whether an instruction was appropriate, the appellate court views the facts in the light most favorable to the instruction's proponent. *Cooper*, 277 Va. at 381, 673 S.E.2d at 187.

Howsare argues that Instruction 7 was an incomplete statement of the law and was misleading because it failed to inform the jury that his intent could be inferred from his statements as well as from his acts and conduct. The Commonwealth concedes that an instruction amending the language of Instruction 7 to read ". . . his acts, conduct and statements" would have been a correct statement of the law, but argues that it nevertheless would not have been reversible error to refuse it. Where other instructions fully and fairly cover the principles of law governing the case, the trial court does not err in refusing an additional instruction on the same subject. *Lincoln v. Commonwealth*, 217 Va. 370, 375, 228 S.E.2d 688, 692 (1976).

We agree with the Commonwealth's argument. Instruction 20, which Howsare proposed and to which the Commonwealth did not object, informed the jury that the statements by the defendant "were submitted for your consideration along with all the other evidence." Thus, the instructions, taken as a whole, stated the law clearly and covered all issues fairly raised by the evidence. *Swisher*, 223 Va. at 503, 290 S.E.2d at 858.

4

Howsare also argues that Instruction 7 improperly emphasized specific evidence, his acts and conduct, as tending to prove a particular fact, his intent, citing *Keefer v. Commonwealth*, 56 Va. App. 520, 524, 694 S.E.2d 802, 804 (2010). Because, as stated above, we review the instructions as a whole, we do not agree.

Howsare objected to Instruction 7 on the ground that it is not a model jury instruction. We find no merit in that argument. Code § 19.2-263.2 expressly provides that an instruction that accurately states the law applicable to the case shall not be withheld for that reason. *See also Brothers v. Commonwealth*, 50 Va. App. 468, 473, 650 S.E.2d 874, 877 (2007). Indeed, the Virginia Model Jury Instructions cite this very statute in advising readers that "a proposed jury instruction which constitutes an accurate statement of the law applicable to the case must not be rejected solely for its nonconformance with model jury instructions." 1 Virginia Model Jury Instructions – Criminal, Chapter 1 Scope Note (1); Role of Instructions Generally, at 1-1 (repl. Ed. 2014) (citing *Williams v. Commonwealth*, 228 Va. 347, 349, 323 S.E.2d 73, 74 (1984)). *See also, e.g.*, *Jeffress v. Virginia Ry. & P. Co.*, 127 Va. 694, 714, 104 S.E. 393, 399 (1920) ("[I]t is well settled that each party has the right to have presented to the jury its contention upon vital points in language to be chosen by it, provided such language is in keeping with the law.") and *Banner v. Commonwealth*, 204 Va. 640, 645-46, 133 S.E.2d 305, 309 (1963) ("It cannot be questioned that both the Commonwealth and the defendant are entitled to appropriate instructions telling the jury the law applicable to each version of the case, provided such instructions are based upon the evidence adduced[, a]nd each party may employ language of its own choosing so long as it is in keeping with the law.") (citations and internal quotation marks omitted).

5

Howsare's second assignment of error raises the question whether Instruction 7 was improperly based on language from appellate cases not involving a jury instruction and meaning to provide a rationale for a particular decision. Because that argument was never presented to the circuit court, the Court of Appeals held that it was barred by Rule 5A:18. We agree and do not consider that assignment of error.

CONCLUSION

Because the jury instructions, taken as a whole, clearly and correctly stated the applicable law and covered all the issues fairly raised by the evidence, we will affirm the judgment of the Court of Appeals.

*Affirmed.*