UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Malveaux, Athey and Senior Judge Humphreys
Argued by videoconference


STEPHEN GEORGE RUSIECKI

                                       MEMORANDUM OPINION[*] BY
v.       Record No. 1559-24-3         JUDGE CLIFFORD L. ATHEY, JR.
                                           NOVEMBER 25, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Andrew S. Baugher, Judge

Paul C. Galanides (Law Office of Paul C. Galanides, P.C., on brief),
for appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Stephen George Rusiecki ("Rusiecki") appeals an order of the Circuit Court of Rockingham County ("trial court") sentencing him to ten years' incarceration for grand larceny in violation of Code § 18.2-95.  On appeal, he contends that the trial court erred by 1) admitting his cell phone records in evidence pursuant to the business records exception to the hearsay rule, 2) denying his motion for a mistrial based upon "[i]rrelevant and [p]rejudicial" evidence of his prior bad acts being admitted at trial, 3) finding the evidence sufficient to convict him of grand larceny, 4) instructing the jury that it was permitted to find that he exclusively possessed stolen property, and 5) responding to an inquiry from the jury in his absence.  For the following reasons, we affirm.

---

[*] This opinion is not designated for publication.  See Code § 17.1-413(A).

On October 3, 2021, a mobile home was stolen from the storage lot of Clayton Homes in Harrisonburg, Virginia. After an investigation, the stolen mobile home was located on a 32-acre tract of land on Bull Creek Road in Halifax County (the "Halifax property"), which Rusiecki was under contract to purchase. Rusiecki was subsequently indicted by a grand jury for one count of grand larceny. A two-day jury trial commenced on September 14, 2023.

At trial, the Commonwealth initially sought to admit in evidence Rusiecki's cell phone records through Shirley Hiner ("Hiner"). Hiner, "a custodian of records for AT&T," confirmed that a CD on which her initials appeared was, "[t]o the best of [her] knowledge, . . . a true and accurate copy of the AT&T records for the phone number" provided to law enforcement by Rusiecki. The Commonwealth then moved to admit the cell phone records in evidence, and Rusiecki requested to voir dire Hiner. During voir dire, Hiner explained that she was employed by AT&T in Chicago, Illinois, and that the phone records were stored "[o]n the AT&T secured database." Hiner conceded that she was unaware of the specific physical location of the database and that she was unable to access the database directly herself. She further explained that she did not produce the phone records, she did not place the records on the disc, and she did not know when the records were transferred or who transferred them. At the conclusion of the voir dire, Rusiecki objected to the Commonwealth's motion to admit the cell phone records in evidence. After several follow-up questions, the Commonwealth again moved to admit the cell phone records in evidence, and Rusiecki objected:

> I do believe that she says she's a records custodian, but she's not in the same physical location as these records whatsoever. These records didn't come from her. She didn't search for those and

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

> produce those and give these to the Commonwealth out of the
> database that she doesn't even have access to. We don't know for
> certain, you know, where these records come from or what they
> report to be.

The trial court overruled the objection and admitted the cell phone records into evidence.

Scott Boehm ("Boehm"), general manager of Clayton Homes, then testified that on October 6, 2021, he noticed that a mobile home was missing from the Clayton Homes storage lot. Boehm subsequently reviewed the business's security footage, which showed a white, four-door pickup truck towing the mobile home from the lot on the morning of October 3, 2021, at approximately 6:59 a.m. Boehm testified that the mobile home taken from the lot that morning "was a 14x50 single section home" worth approximately $70,000. Boehm also noted that the mobile home had been "parked at the back of [the] lot" resting on cinder blocks. Thus, he concluded that the process to remove the mobile home from the lot would have taken approximately 30 minutes.

Phillip Verdow ("Verdow"), the realtor who had listed the Halifax property for sale, testified that Rusiecki expressed interest in the Halifax property, visited the Halifax property, and executed a sales contract, in part, by placing a "small deposit on it."[2] Verdow also testified that he witnessed Rusiecki on the Halifax property at least once in a white, four-door truck. He also "noticed a single wide on the property" approximately two or three weeks after Rusiecki executed the sales contract. After the discovery of the mobile home, law enforcement contacted Verdow and "asked [him] to make an arrangement to meet . . . Rusiecki and pick up the rest of the money." As Verdow was driving to meet Rusiecki on October 9, 2021, Rusiecki called and changed the meeting location from the Halifax property to a gas station in the town of Amherst.

Campbell County Sheriff's Office Investigator Stuart Herndon ("Investigator Herndon") then testified that on October 8, 2021, he received a tip from Harrisonburg Police Department

---

[2] The sales contract was dated September 28, 2021.

- 3 -

Detective Mike Spiggle ("Detective Spiggle") regarding "a truck that was towing a mobile home through Campbell County" that had passed through "a specific intersection." In response, Investigator Herndon obtained security footage from a gas station "across the street from that location."[3] Timestamped at approximately 9:33 a.m. on October 3, 2021, the security footage showed a white, four-door pickup truck towing a mobile home past the gas station.

Investigator Herndon further testified that when Rusiecki arrived in Amherst on October 9, 2021, he was driving "[a] white pickup truck with a flat bed." To Investigator Herndon, Rusiecki's pickup truck and the pickup truck depicted towing the mobile home in the security footage from the gas station were either "the same or substantially similar." During a subsequent custodial interview, Rusiecki provided Investigator Herndon his cell phone number, stating that it was his only phone number and that it had been his phone number for approximately 12 to 15 years.

Detective Spiggle testified that during his investigation, he viewed the Clayton Homes security footage, which he described as "depict[ing] a Dodge dually pulling out a tan colored trailer on the property on the South Main Street." He then issued a press release, which described the "suspect vehicle . . . as a white four-door flatbed truck with amber colored running lights above the cab." Based on the Campbell County gas station security footage, he created a second press release identifying the "suspect vehicle . . . as a white, four door, Dodge Ram 3500 or 4500, flat-bed truck with amber running lights above the cab" and requested "a local news station to run a . . . news bulletin on it." A subsequent tip led law enforcement to locate the stolen mobile home on the Halifax property.

---

[3] The gas station was later identified as the Community Mini Mart in Gladys, Virginia.

After Rusiecki was taken into custody, Detective Spiggle photographed Rusiecki's pickup truck as well as several documents bearing Rusiecki's name that were found inside.[4] He also interviewed Rusiecki. During Detective Spiggle's testimony, the Commonwealth moved to publish the video recording of his interview with Rusiecki to the jury without objection. While the video was playing in open court, Rusiecki objected,[5] "Your Honor, I held off on objecting to all of this for the sake of doing this trial, but I object to anything in regards to any past crimes, crimes charged with, any of this stuff. It's completely relevant [sic] and it's very prejudicial." The Commonwealth responded, "Judge, to the extent that the other things I've already past, I would say that objection is not timely made. If he's making one as to the statement that's being made now, I'm happy to stop the video at this point." The trial court then stated, "All right. We're going to stop the video. I'm going to instruct the jury, you're to disregard any information you've heard regarding criminal histories or other charges or probation or anything of that nature. We're dealing just with the grand larceny charge that we have in this courtroom today." The Commonwealth subsequently moved "to admit the video with the parts that have been excluded by the [c]ourt at this point." Detective Spiggle's and Investigator Herndon's respective, separate interviews of Rusiecki were admitted in evidence on one disc.

Following Detective Spiggle's testimony, the trial court dismissed the jury for the day. After a recess, the parties discussed jury instructions. The Commonwealth proposed an instruction on the permissive inference that "the defendant was the thief," which arises from "proof of the

---

[4] The photographs showed that Rusiecki's pickup truck was a white, four-door "Dodge Ram 5500" with a flat bed and running lights above the cab.

[5] The video recording of Detective Spiggle's interview with Rusiecki contained references to Rusiecki's criminal history, his status as a probationer, and his sex-offender status. Based on the record, it appears that the portion of the video recording played at trial before Rusiecki objected contained discussions regarding his criminal history and status as a probationer and that he only noted his objection once his sex-offender status was being discussed.

exclusive possession by the defendant of the recently stolen" property. Noting that the instruction was "a model jury instruction," *see* Model Jury Instrs.—Crim. No. 36.300, and "a correct statement of law," the Commonwealth asked the trial court to give the instruction. Rusiecki objected, arguing that the evidence did not show that he was in exclusive possession of the stolen mobile home because he was not on the Halifax property "when the trailer was found" and he could not be identified as the driver of the truck towing the mobile home. The trial court took the jury instruction under advisement.[6]

At the outset of the second day of trial, Rusiecki moved for a mistrial citing "the second video shown regarding him being a sex offender," which the trial court "ruled to keep . . . out with a limiting instruction." He requested a mistrial "based upon that even being heard by the jury," because he did not believe the jury could "overcome that" even with a limiting instruction. The trial court took the motion under advisement.

After being qualified as "an expert in historical cell site analysis," Federal Bureau of Investigation Special Agent Jeremy D'Errico ("Special Agent D'Errico") then testified that he had conducted "a historical cell site analysis" using the AT&T cell phone records for Rusiecki's phone number. He also prepared a PowerPoint demonstrative exhibit, which was admitted into evidence.

Through his testimony and demonstrative exhibit, Special Agent D'Errico showed that on the evening of October 2, 2021, Rusiecki's cell phone was located in the vicinity of Summersville, West Virginia. On October 3, 2021, the day the mobile home was stolen, Rusiecki's cell phone traveled to "the Bridgewater/Harrisonburg area," in the early morning hours, arriving at

---

[6] Another jury instruction proposed by the Commonwealth during this portion of the proceedings was an instruction that read: "Upon your request, any exhibits introduced into evidence may be sent to the jury room to be considered in your deliberations." The trial court, indicating that it would grant that instruction, stated that "[t]he Bailiff would have to play any portion of video that [the jury] may want to see." Rusiecki was present in the courtroom with counsel when this remark was made. The instruction was ultimately given as proposed. Jury Instr. 6.

approximately 6:31 a.m. From 6:31 a.m. to 7:00 a.m., Rusiecki's cell phone was located in the vicinity of two different cell sites that "provide coverage to the area of Clayton Homes." From 7:00 a.m. to 9:32 a.m., the phone traveled from "the Harrisonburg area" to "the Staunton area" to "the Charlottesville area near the intersection of 29 and 64." The phone then used cell sites near Gladys, Virginia, "outside the Community Mini Mart at about 9:32 a.m." Lastly, the phone traveled south "closer to the area of th[e] Halifax property."

Special Agent D'Errico also performed an analysis for Rusiecki's cell phone on October 9, 2021, which showed a trip from the "area of Summersville, West Virginia, all the way through down into the area of Amherst, Virginia," the location of his arrest on that date. Rusiecki's cell phone records showed that on that day he called Verdow twice while in route.

The Commonwealth rested, and Rusiecki moved to strike. He argued that no direct evidence placed him at the scene of the crime or on scene when and where the trailer was ultimately found. He further argued that the vehicle depicted in the pictures and videos admitted into evidence could not be linked to him. Additionally, he contended that he had not been seen with the trailer on the Halifax property and that the "white Dodge truck" had not been seen on the Halifax property with the trailer. And he further asserted that the phone number could not be linked to him on the day that the theft occurred and noted that there was no DNA evidence or fingerprints connecting him to the crime. Additionally, Rusiecki noted that he did not own the Halifax property and that it was "still somebody else's property and it's property that had access by many people." While he noted that evidence placed his cell phone in the vicinity of the Halifax property on October 3, 2021, Rusiecki argued that the Commonwealth's evidence did not place him on the property that day.

The trial court denied Rusiecki's motion to strike. Furthermore, the trial court ruled that it would give the Commonwealth's proposed jury instruction on the inference arising from the exclusive possession of recently stolen property. That instruction provided:

> If you believe from the evidence that the mobile home belonging to Clayton homes was taken and carried away, that the taking was against the will and without the consent of the owner, and that the taking was with the intent to steal, then proof of the exclusive possession by the defendant of the recently stolen mobile home is a circumstance from which you may reasonably infer that the defendant was the thief, unless, from all the evidence, you have a reasonable doubt as to whether the defendant was the thief.
>
> You may not find from the possession of recently stolen goods alone that the defendant is guilty of larceny.
>
> The term "recently" is a relative term. Drawing an inference of guilt from unexplained possession becomes less reasonable as more time elapses from the time of the theft.
>
> "Exclusive possession" must be actual knowing possession.

Jury Instr. 11. The trial court noted Rusiecki's objection. It also denied Rusiecki's motion for a mistrial, noting that "it was made well after the introduction of the evidence."

After declining to present evidence, Rusiecki renewed his motion to strike, which the trial court denied. The jury was instructed and, after closing arguments, retired to deliberate. Thereafter, the trial court took a recess, and the jury subsequently returned with its verdict, finding Rusiecki guilty of grand larceny.

At a hearing on December 29, 2023, Rusiecki requested the trial court to instruct his trial counsel "to finish providing [him] the rest of the documents that [he] requested[.]" Rusiecki's trial counsel advised him that he did not have in his possession a note containing a "question from the jury about what evidence they wanted to review," but Rusiecki requested the note and "a copy of the evidence that was submitted for that request." The trial court responded, "Well, I'll tell you while we're here that there is no written note from the jury. It may have been an oral request to review the, I believe they wanted to review the security footage again." Rusiecki's trial counsel then stated, "They did, Your Honor. And I looked in OCRA and I didn't see anything in the electronic file, so I didn't, I didn't know." The trial court further explained, "I think it was just a request to the Bailiff that they be able to watch that, and they did watch it here in the courtroom."

On June 10, 2024, Rusiecki filed a motion to set aside the verdict, arguing, inter alia, that he "was denied his Sixth Amendment right to be present at all stages of the criminal proceeding when the [c]ourt received inquiry from the jury during deliberations and responded in [his] absence." At a hearing on the motion, Rusiecki's counsel explained that he was "relying in part on [his] reading in between the lines and on [Rusiecki's] representations" and that his "understanding from those sources is that . . . the [c]ourt fielded a question from the jury in the absence of [Rusiecki]." The trial court responded that it had "zero recollection of that. There's no note in the file, and we file those. There's no notes in the Clerk's file that happened, and there's nothing in the transcript. And if it was outside your client's presence, how would you know?" The trial court thereafter denied the motion and sentenced Rusiecki to ten years' incarceration. Rusiecki appealed.

## II. ANALYSIS

### A. *Standard of Review*

"The determination of the 'admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (quoting *Tirado v. Commonwealth*, 296 Va. 15, 26 (2018)). Additionally, the trial court's decision to grant a jury instruction is reviewed for an abuse of discretion. *See Howsare v. Commonwealth*, 293 Va. 439, 443 (2017). The decision to deny a mistrial also "rests within the trial court's sound discretion" and will not be reversed "'unless there exists a manifest probability that [the ruling] was prejudicial.'" *Clark v. Commonwealth*, 78 Va. App. 726, 756 (2023) (alteration in original) (quoting *Nelson v. Commonwealth*, 41 Va. App. 716, 731-32 (2003), *aff'd*, 268 Va. 665 (2004)). "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is "plainly wrong or without evidence to support it.""" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). Finally, whether

a defendant's Sixth Amendment right to be present during his trial has been violated "presents a 'mixed question[] of law and fact[,]' and thus, is subject to *de novo* review." *Blowe v. Commonwealth*, 72 Va. App. 457, 468 (2020) (alterations in original) (footnote omitted) (citation omitted) (quoting *Rankin v. Commonwealth*, No. 1671-16-1, slip op. at 15 (Va. Ct. App. Apr. 24, 2018)), *aff'd on other grounds*, 297 Va. 199 (2019)). In conducting this review, "we give deference to the factual findings of the circuit court, but we independently determine" whether the defendant's Sixth Amendment right to be present has been violated. *McCain v. Commonwealth*, 275 Va. 546, 552 (2008).

B. *The argument that the trial court erred by admitting the AT&T cell phone records is waived.*

On appeal, Rusiecki argues that the trial court abused its discretion by admitting the AT&T cell phone records where Hiner "failed to testify to any of the elements of the foundation for admitting a business record" under Virginia Rule of Evidence 2:803(6). We find that Rusiecki has waived this assignment of error and his arguments in support thereof.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. At trial, Rusiecki objected to the admission of the AT&T cell phone records on the basis that Hiner was not a proper custodian of records. He did not argue that Hiner had failed to establish any other element of Virginia Rule of Evidence 2:803(6). Hence, the only issue preserved for our review is whether the trial court erred by concluding that Hiner was a proper custodian of records.[7] *See* Rule 5A:18.

---

[7] The Commonwealth argues on brief that Rusiecki has waived this assignment of error under Rule 5A:18, noting that Rusiecki "did not specifically object on the basis that the AT&T records were inadmissible under the business records exception to hearsay as outlined by Rule 2:803(6)." However, as the Commonwealth acknowledges on brief, Rusiecki "objected to Hiner's status as the proper custodian of the AT&T records." Thus, we conclude that Rusiecki preserved his objection to Hiner's status as a proper custodian of records for purposes of the business records exception to hearsay. *See Godoy v. Commonwealth*, 62 Va. App. 113, 118 &

- 10 -

But on brief, Rusiecki's argument on this point is conclusory and devoid of any citation to authority. Rusiecki argues, in relevant part:

> [O]ther than her calling herself a custodian of the records, there was nothing about Ms. Hiner's testimony which addressed the components of a proper foundation for business records, or which supported a conclusion that she was a proper custodian of the records being offered. Clearly, there was no basis upon which the trial court could have concluded that the records were, in fact, what they purported to be and the admission of the records was error.

"Rule 5A:20 requires that an opening brief contain '[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error.'" *Blankenship v. Commonwealth*, 71 Va. App. 608, 623 n.2 (2020) (alteration in original) (quoting Rule 5A:20(e)). "'[W]hen a party's "failure to strictly adhere to the requirements of Rule 5A:20(e)" is significant,' this Court may treat the question as waived." *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Parks v. Parks*, 52 Va. App. 663, 664 (2008)). And "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Blankenship*, 71 Va. App. at 623 n.2 (quoting *Bartley*, 67 Va. App. at 746). The conclusory nature of Rusiecki's assertion, combined with a lack of citation to authority, "leaves us without a legal prism through which to view his alleged error" and leads us to conclude that Rusiecki has waived this assignment of error pursuant to Rule 5A:20(e). *Bartley*, 67 Va. App. at 746. Hence, we do not consider it.

n.1 (2013) (finding "that appellant adequately alerted the trial court to his objection on hearsay grounds" where appellant objected to the admissibility of his cell phone records twice, first arguing that the Commonwealth had not yet established "'all of the elements of the business record,'" and then arguing that the Commonwealth "'still . . . ha[d] not satisfied all the elements for business record'" and that there was "'at least one element missing'").

C.  *Rusiecki's motion for a mistrial was untimely.*

Rusiecki also contends that the trial court erred by denying his motion for a mistrial after the Commonwealth introduced evidence identifying him as a sex offender.  Because his motion for a mistrial was untimely, we do not address this assignment of error.

"A motion for a mistrial must be made promptly; otherwise, the claim is deemed to have been waived." *Breard v. Commonwealth*, 248 Va. 68, 81 (1994).  "Making a timely motion for mistrial means making the motion 'when the objectionable words were spoken.'" *Yeatts v. Commonwealth*, 242 Va. 121, 137 (1991) (quoting *Reid v. Baumgardner*, 217 Va. 769, 774 (1977)).

While the video recording of his interview was playing, Rusiecki objected.  The video was stopped, the trial court immediately issued a curative instruction, and the recorded interview was subsequently admitted into evidence.  At the end of Detective Spiggle's testimony, the trial court dismissed the jury and took a recess before returning to discuss the issue of jury instructions with the parties.  The next day, Rusiecki moved for a mistrial, but his motion came too late. *See Yeatts*, 242 Va. at 137.  As noted by the trial court, Rusiecki's motion for a mistrial was "made well after the introduction of the evidence." *See id.*; *Breard*, 248 Va. at 81 (holding that a motion for a mistrial based on evidence admitted at trial was untimely when it was made after "[f]our other witnesses then testified" and "the trial was recessed for a lunch break").  Hence, we do not consider this assignment of error. *See Breard*, 248 Va. at 81.

D.  *The evidence was sufficient to convict Rusiecki of grand larceny.*

In contesting the sufficiency of the evidence to support his conviction for grand larceny, Rusiecki contends that the evidence admitted failed to exclude a reasonable hypothesis of innocence: that someone else stole the mobile home.  We disagree.

In reviewing the sufficiency of the evidence on appeal, "the evidence is 'considered as a whole.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Stamper v. Commonwealth*,

220 Va. 260, 273 (1979)). "This approach recognizes that 'while no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Id.* at 97-98 (alteration in original) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)). "[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Pijor*, 294 Va. at 512 (alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)).[8] "The circumstantial evidence of criminal agency must 'point unerringly' to the defendant, which means no more and no less than it must exclude every reasonable hypothesis of innocence." *Harward v. Commonwealth*, 5 Va. App. 468, 478 (1988) (quoting *Cook v. Commonwealth*, 226 Va. 427, 433 (1983)).

"Importantly, '[t]he hypotheses [of innocence] which must be thus excluded are those which flow from the evidence itself, and not from the imaginations of defense counsel.'" *Commonwealth v. Wilkerson*, 304 Va. 92, 102 (2025) (alterations in original) (quoting *Cook*, 226 Va. at 433). "[T]his requirement—that a reasonable hypothesis of innocence must flow from the evidence— simply reflects the reality that a defendant's asserted hypothesis of innocence must be supported by at least some evidence, because if it is not, it cannot create a 'reasonable' doubt regarding the defendant's guilt." *Id.* Where a defendant raises an alternative hypothesis of innocence on appeal, "the issue is whether a reasonable fact finder, upon consideration of all the evidence, could have rejected defendant's theories and found him guilty of the charged offense beyond a reasonable doubt." *Fary v. Commonwealth*, 77 Va. App. 331, 343 (2023) (en banc) (quoting *Coles v.*

---

[8] "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." *Fary v. Commonwealth*, 77 Va. App. 331, 344 (2023) (en banc) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 249-50 (2016)), *aff'd*, 303 Va. 1 (2024).

*Commonwealth*, 270 Va. 585, 589 (2005)).  "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong."  *Id.* at 344 (quoting *Lucas v. Commonwealth*, 75 Va. App. 334, 348 (2022)).  Ultimately, "the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

By asserting the alternative hypothesis of innocence that someone other than him stole the mobile home from Clayton Homes, Rusiecki challenges the sufficiency of the evidence to establish that he was the criminal agent responsible for the grand larceny.  *See Fary*, 77 Va. App. at 343.  He asserts that the Commonwealth failed to prove 1) that he was the driver of the white, four-door pickup truck, 2) that the white, four-door pickup truck towing the mobile home was his, and 3) that his cell phone was in his possession on the day of the theft.

A reasonable fact finder could have rejected this hypothesis of innocence and found Rusiecki guilty beyond a reasonable doubt.  *See id.*  Although no direct evidence depicted Rusiecki driving the white, four-door Dodge pickup truck that was captured on security footage leaving the Clayton Homes property with the stolen mobile home and traveling through Gladys, Virginia, there was sufficient circumstantial evidence from which a reasonable juror could have found beyond a reasonable doubt that he was the driver of the vehicle on that day.  *See id.*; *Pijor*, 294 Va. at 512.  The Commonwealth adduced evidence that Rusiecki owned a white, four-door Dodge Ram pickup truck with a flat bed, which was the same color, make, and model as the pickup truck that towed away the stolen mobile home.  Approximately a week after the theft, Rusiecki drove to Amherst, Virginia, in a white, four-door "Dodge Ram 5500" with a flat bed, in which several documents bearing his name were found.  The pickup truck also matched the description of the pickup truck located on the Halifax property in which Verdow had seen Rusiecki prior to the theft.

Additionally, on the day the mobile home was stolen, Rusiecki's cell phone records showed that he left Summersville, West Virginia, in the early morning hours, and by approximately 6:30 a.m., he arrived in Harrisonburg in the vicinity of Clayton Homes. He was present there at the time the truck towed the mobile home off the property and for approximately thirty minutes beforehand—the amount of time Boehm estimated it would have taken to remove the mobile home from its temporary foundation on the lot. He was also present in Gladys, Virginia, when the white, four-door Dodge pickup truck traveling through was captured on security footage. By mid-morning, Rusiecki was in the vicinity of the Halifax property—a property he was under contract to purchase and the location where the stolen mobile home was eventually located and recovered. On the day of his arrest, Rusiecki was traveling with his cell phone, as indicated by the calls he placed to Verdow while in transit. Whether the white, four-door Dodge pickup truck that towed away the stolen mobile home was Rusiecki's and whether Rusiecki had his cell phone on his person on the day of the theft, as well as the ultimate question of whether Rusiecki was the driver of the vehicle, are all questions of fact that were resolved by the jury against Rusiecki. *See Fary*, 77 Va. App. at 344. We cannot say that no rational juror would have done so, *see Vasquez*, 291 Va. at 248, because in this case, the totality of the evidence "'point[s] unerringly' to the defendant" and no one else. *Harward*, 5 Va. App. at 478 (quoting *Cook*, 226 Va. at 433). Therefore, we find the evidence sufficient to sustain Rusiecki's conviction for grand larceny.

E. *The trial court did not err in giving Jury Instruction 11.*

Rusiecki maintains that it was "error for the trial court to reason that the jury could infer exclusive possession from the evidence that [Rusiecki] was driving a similar truck as the truck that took the mobile home and coincidence of [Rusiecki]'s cell phone movements." Rusiecki does not contend that Jury Instruction 11 was an inaccurate statement of the law; he asserts that there was insufficient evidence of exclusive possession to justify giving Jury Instruction 11. We disagree.

- 15 -

In reviewing a trial court's decision to grant a jury instruction, "[t]he reviewing court's sole responsibility is to ensure that the law has been clearly stated in the instructions and that they cover all the issues that the evidence fairly raises." *Howsare*, 293 Va. at 443. "A trial court '*may not refuse to grant a proper, proffered instruction*' if there is more than 'a scintilla' of evidence supporting the instruction." *Northcraft v. Commonwealth*, 78 Va. App. 563, 604-05 (2023) (quoting *Dandridge v. Commonwealth*, 72 Va. App. 669, 680 (2021)). "Whether there is more than a mere scintilla of evidence is determined on a case-by-case basis." *Id.* at 605 (quoting *Jones v. Commonwealth*, 71 Va. App. 70, 94 (2019)). "In deciding whether an instruction was appropriate, the appellate court views the facts in the light most favorable to the instruction's proponent." *Howsare*, 293 Va. at 443.

"For the larceny presumption to arise, the Commonwealth must establish that the accused was in exclusive possession of property recently stolen." *Best v. Commonwealth*, 222 Va. 387, 389 (1981). "One can be in exclusive possession of an item when he jointly possesses it with another," provided that "the accused was consciously asserting at least a possessory interest in the stolen property or was exercising dominion over the stolen property." *Id.*; *see also Nelson v. Commonwealth*, 12 Va. App. 268, 271 (1991) (noting that to demonstrate exclusive possession "there must be evidence that the defendant exercised dominion and control over the property"). The presumption that the defendant was the person who stole the property, however, "does not arise when the evidence merely reveals that the stolen property was found in a place to which several people, including the accused, had access." *Best*, 222 Va. at 389.

Viewing the evidence in the light most favorable to the Commonwealth, the trial court did not abuse its discretion. On October 3, 2021, Rusiecki's truck was used to tow the stolen mobile home off the Clayton Homes lot, and Rusiecki's cell phone records showed that he was in the truck that was towing the mobile home as it was in transit across the Commonwealth during the hours

immediately following the theft. Therefore, there was evidence adduced showing that Rusiecki towed the stolen mobile home. In towing the stolen mobile home, Rusiecki was "consciously asserting at least a possessory interest in the stolen property or was exercising dominion over the stolen property." *Best*, 222 Va. at 389; *see also Crews v. Commonwealth*, 3 Va. App. 531, 537 (1987) (attempting to sell stolen property shows conscious assertion of a possessory interest). Thus, the Commonwealth adduced "more than 'a scintilla' of evidence" that Rusiecki was in exclusive possession of the stolen mobile home as he was towing it, so the trial court did not err by giving Jury Instruction 11.[9] *Northcraft*, 78 Va. App. at 604-05 (quoting *Dandridge*, 72 Va. App. at 680).[10]

F. *Rusiecki has not shown that the trial court violated his Sixth Amendment right to be present during his trial.*

Lastly, Rusiecki contends that the trial court denied him his Sixth Amendment right to be present during his trial by responding to a question from the jury in his absence. We disagree.

"[A] defendant charged with a felony has a constitutional right and a statutory right to be personally present during the trial." *Grafmuller v. Commonwealth*, 290 Va. 525, 531 (2015). Indeed, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Remington v. Commonwealth*, 262 Va. 333, 361 (2001) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)). This "constitutional imperative is the same" as the statutory imperative, *Grafmuller*,

---

[9] Rusiecki also contends that the instruction improperly allowed the jury to "make an inference about the ultimate issue in the case based only upon other inferences." But this specific argument was not presented to the trial court, and as such, this Court will not consider it. *See* Rule 5A:18; *Ohree v. Commonwealth*, 26 Va. App. 299, 307-08 (1998) ("The Court of Appeals will not consider an argument on appeal which was not presented to the trial court.").

[10] In light of this conclusion, we do not address Rusiecki's additional contention that the jury should not have been instructed on the larceny presumption because the mere discovery of the stolen mobile home on the Halifax property was insufficient evidence of his exclusive possession of the mobile home. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

290 Va. at 531, which holds that "a defendant 'must be present on his arraignment, when any evidence is given or excluded, when the jury is charged, when the trial court wishes to communicate with the jury in answering questions by [it], and when the jury receives further instructions,'" *Remington*, 262 Va. at 360 (alteration in original) (quoting *Palmer v. Commonwealth*, 143 Va. 592, 605 (1925)). To determine whether a defendant's right to be present has been violated, we must ask: "Has the interest of the defendant been affected by the action of the judge?" *Rogers v. Commonwealth*, 183 Va. 190, 194-95 (1944).

Our review of this issue on appeal is also informed by the general principle that "all trial court rulings come to an appellate court with a presumption of correctness." *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019) (quoting *Stiles v. Stiles*, 48 Va. App. 449, 453 (2006)). "In challenging [a] court's decision on appeal, the party seeking reversal bears the burden to demonstrate error on the part of the trial court." *Willems v. Batcheller*, 78 Va. App. 199, 213 (2023) (alteration in original) (quoting *Sobol v. Sobol*, 74 Va. App. 252, 272-73 (2022)). Additionally, "[b]ecause the judgment of the court below is presumed to be correct, the onus is upon the appellant to provide the reviewing court with a sufficient record from which it can be determined whether the trial court erred as the appellant alleges." *White v. Morano*, 249 Va. 27, 30 (1995).

Assuming without deciding that this assignment of error is properly before us,[11] we are compelled to find no error on the part of the trial court. The record, when viewed in the light most

---

[11] Rusiecki acknowledges the lack of a contemporaneous objection. Citing Code § 8.01-384, he argues that his failure to contemporaneously object to the trial court's alleged action "is excusable." *See* Code § 8.01-384 ("[I]f a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection shall not thereafter prejudice him on motion for a new trial or on appeal."). The record suggests that Rusiecki's trial counsel had the opportunity to object, but failed to do so, as at the hearing on the motion to withdraw, his counsel agreed that the jury had orally requested the bailiff to play security footage. However, we assume without deciding that this issue is preserved for this Court's review. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (noting that assuming without deciding an issue is permissible if it allows the Court to "resolve the appeal on the best and narrowest grounds").

favorable to the Commonwealth, establishes that the trial court did not field a question from the jury in his absence. The trial court had "zero recollection" of having fielded a question from the jury in Rusiecki's absence. And while the trial court's practice was to maintain a record of questions received from a jury by filing notes from the jury, there was "no note in the file." Nor were there any "notes in the Clerk's file" or the transcript. Unless the alleged error appears somewhere else in the record, we must conclude that the trial court did not field a question from the jury in Rusiecki's absence, and therefore, did not err as Rusiecki has alleged. *See White*, 249 Va. at 30.

But Rusiecki points to no evidence compelling a contrary result, despite it being his burden to do so. *See Willems*, 78 Va. App. at 213. The trial court's remarks during the December 29, 2023 hearing on Rusiecki's trial counsel's motion to withdraw merely show that the jury orally requested the bailiff to review video footage admitted into evidence at trial and that the bailiff subsequently played the video evidence for the jury in the courtroom outside the presence of the defendant. Further corroborating this narrative, during a discussion regarding jury instructions, the trial court notified Rusiecki, his counsel, and the Commonwealth that "[t]he Bailiff would have to play any portion of video that [the jury] may want to see," to which no objection was lodged.[12] Hence, Rusiecki has not provided this Court with any record of the trial court fielding a question from the jury in his absence, and we will not presume that it did so. *See Wynnycky*, 71 Va. App. at 192.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment. Rusiecki waived his challenge to the admissibility of his cell phone records, and his motion for a mistrial was untimely. The evidence was sufficient to prove that Rusiecki committed grand larceny, and the trial court did

---

[12] Although Rusiecki asserts, in the alternative, that "even if the request was handled entirely fielded by the courtroom deputies," this would still constitute a violation of his Sixth Amendment right to be present, he did not present this argument to the trial court, so we do not address it. *See* Rule 5A:18; *Ohree*, 26 Va. App. at 307-08.

not err by giving Jury Instruction 11.  Lastly, the record does not support Rusiecki's contention that his Sixth Amendment right to be present was violated by the actions of the trial court.

*Affirmed.*